595 A.2d 133

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Robert Charles GRUBB, Jr.**

Superior Court of Pennsylvania.

Argued January 22, 1991.

Filed July 25, 1991.

John M. Eakin, Asst. Dist. Atty., Carlisle, for the Com., appellant.

Hubert X. Gilroy, Carlisle, for appellee.

Before OLSZEWSKI, BECK and TAMILIA, JJ.

TAMILIA, Judge:

This is an appeal from an April 30, 1990 Order suppressing physical evidence obtained as a result of a purportedly faulty search warrant. The relevant facts are as follows.

On October 13, 1989, Officer Steven Resser of the East Pennsboro Police Department and Special Agent Jeffrey Mohn of the Pennsylvania State Attorney General's Office

met with a confidential informant, Scott Ohler, to discuss illegal narcotic sales made by appellee, Robert Charles Grubb, Jr., the target of an ongoing police investigation. The focus of the interview and investigation was drug sales allegedly being conducted out of appellee-Grubb's 829 S. Humer Street home in East Pennsboro, Cumberland County, Pennsylvania.

Commencing at approximately 9:45 p.m., with Ohler's consent to interception of a phone call, Fairview Township Police Detective Ronald Diller telephoned appellee's residence several times. The phone calls were received by appellee's son, Robert Grubb, III. A transcript of the telephone calls admitted into evidence, albeit cryptic,[1] discloses that informant Ohler and appellee's son discussed completing a drug transaction upon the expected arrival of a drug shipment to appellee's home that evening. In a phone call placed at approximately 1:00 a.m., Ohler was informed by Grubb the shipment had arrived. Ohler then made plans with Grubb to immediately go to appellee's home to purchase drugs.

Based on this evidence, the officers secured a night time search warrant from District Justice Ronald Klair. The probable cause affidavit, the subject in dispute in this case, states the following:

> That your affiant Steven Resser has been a police officer for over 15 years and has perticipated (sic) in excess of 20 drug related investigations. Your Co-affiant has been a drug agent for over 8 years and has been involved in excess of 400 drug investigations and in excess of 20 search and seizure warrants.

> That on 10/13/89 your affiant interviewed a confidential informant who stated that he has within the past 48 hours been to the residence of Robert Grubb and did at that

_____

1. We agree with the trial court's finding wherein the court states: "While the conversation was somewhat cryptic, it is clear that both Mr. Ohler and Mr. Grubb were discussing the purchase of a substance which neither of them wished to name over the telephone." (Slip Op., Hess, J., 4/30/90, p. 2.) We note "hashish" was specifically referred to at one point in a conversation.

time observe in excess of one ounce of marihuana and in excess of 10 grams of hashish. The confidential informant advises that he has purchased controlled substances from Robert Grubb Jr. at least 25 times over the past several years and has had personnal (sic) knowledge of at least one occasion when Robert Grubb Jr. had in his possession over 20 pounds of marihuana.

That on 10/13/89 and within the past 10 hours the confidential informant under the direction of your co-affiant Jeffrey Mohn and Det. Ronald Diller of Fairview Twp. Police, placed a telephone call to Mr. Robert Grubb, Jr. During the call Robert Grubb Jr. advised the confidential informant that he could obtain controlled substances at Robert Grubb Jr.'s residence, 829 S. Humer St, E. Pennsboro Pa. The C/I was advised to come to the residence for the drugs.

That your affiant and Co-affiant report that it is a normal occurance (sic) for those involved in drug trafficking to keep firearms at or near the location where drugs are kept. In addition controlled substances can be readly (sic) destroyed in the event the person(s) involved in drug trafficking become alarmed to the presence of police. For the purpose of officer safety and to prevent the destruction of evidence, your affiant respectfully requests that a no-knock search warrant be issued. Your affiant and co-affiant additionally report that when drugs are present and drugs are being sold or used the drugs can be sold very quickly. In order to prevent the controlled substances at the Grubb residence from being sold or used your affiant requests that a night time search warrant be granted so that the information in this affidavit can be acted on immeaditally (sic).

(Search warrant, Record at pp. 4–5.)

After securing the search warrant, the Tri County Narcotics Task Force, composed of state and local authorities, conducted a raid on the appellee's home. Pursuant to the warrant, the police did not knock or announce their identity or purpose, but rather broke down the door without allow-

ing appellee the opportunity to voluntarily surrender the premises. Inside, the police at once announced their identity. Police recovered from the premises a crossbow, an unloaded 12 gauge shotgun as well as an unloaded .45 caliber automatic handgun with loaded clips near appellee's bed. A stash of cocaine and marijuana, as previously referred to in the phone conversations between Ohler and Grubb, was recovered from inside the premises, in addition to a scale containing suspected cocaine residue.

On the basis of its finding Pa.R.Crim.P. 2007, **Manner of Entry Into Premises,** had been violated, the trial court suppressed all the aforementioned evidence as fruit of an illegal search. It is this suppression Order which is now challenged by the Commonwealth.

 Our standard of review on appeal from a suppression ruling is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Morgan,* 517 Pa. 93, 534 A.2d 1054 (1987). Rule 2007, *supra,* provides in relevant part:

(a) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the warrant, *unless* **exigent circumstances** *require his immediate forcible entry.*

Pa.R.Crim.P. 2007(a) (emphasis supplied). We hold the statement of probable cause, on its face, provided an insufficient statement of reliable exigent circumstances to allow an unannounced entry into appellee's home.[2]

---

**2.** We would not reach the issue proposed by the Concurring Opinion that Pennsylvania law does not permit a warrant containing a no knock search provision under all circumstances. That issue is not ripe for disposal here and the Concurring Opinion propounds dicta when it attempts to resolve that issue. The rapidly shifting balance in the application of search and seizure principles to recent cases requires that we not extend our holdings beyond what is necessary to resolution of the issue at hand. It is difficult to say how an issuing

■ While the Commonwealth argues that had the officers knocked and announced themselves and their purpose, they would have alerted appellee to refuse police entry and given him the opportunity to stall for time and destroy the drugs on the premises, this is pure speculation. Noncompliance with the requirement police officers give notice of their identity and purpose before attempting to enter private premises may be justified if the occupant is fleeing or attempting to destroy evidence or if the police are virtually certain the occupant is already aware of their purpose. However, the mere fact that the evidence being sought is easily destroyed does not suspend the requirement. There must be some affirmative indication to support a belief the evidence is being destroyed. *Commonwealth v. Clemson*, 234 Pa.Super. 191, 338 A.2d 649 (1975). The fourth amendment requires the police to knock and identify themselves and only if their calls are not answered within a reasonable time under the circumstances may force then be used to enter. While there is no constitutional requirement that police afford suspects a reasonable opportunity to destroy evidence, it is only when police actually have reason to believe the evidence is being destroyed while they wait outside the door that they may forcibly enter the premises. *Commonwealth v. Early*, 236 Pa.Super. 60, 345 A.2d 197 (1975). In the case *sub judice,* there is no showing the police believed destruction of the evidence was imminent, thus justifying the waiver of the knock and announce rule.

The Commonwealth asserts a knock and announce entry by police would allow the suspected drug dealers the opportunity to arm themselves against police intrusion thereby imperiling the police officers' safety. They base this argument on the inherent danger armed drug dealers pose to police, as well as the officer's experience[3] in conducting

authority should rule in the case of known terrorists, revolutionaries and drug cartel members.

3. Special Agent Mohn testified that he has been a narcotics agent since 1982 and a patrol officer prior to that. He conservatively estimated that in over 200 searches in which he was involved, weapons were

drug raids. Under limited circumstances, the knock and announce rule has been disregarded where police had reason to believe announcement prior to entry would imperil their safety. *See Morgan, supra; Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982); *Commonwealth v. Johnson,* 223 Pa.Super. 83, 289 A.2d 733 (1972). However, in this case, to accept the Commonwealth's argument is to recognize a presumption whereby exigent circumstances sufficient to do away with the knock and announce rule would exist any time a search for drugs is conducted. We would, in effect, be taking judicial notice of the fact that drug dealers customarily carry weapons and, therefore, any search of a suspected dealer's operating base would necessarily endanger the investigating officers. We are unwilling to create this presumption. Such a fundamental change in the knock and announce rule should not be made by judicial determination based on allegations in a particular case but must be addressed in careful and studied deliberation by the legislature. Vague allegations in a probable cause affidavit to a magistrate do little to protect the arresting officer and weaken the safeguards provided to the citizenry by the Constitution. The right, on the scene, under exigent circumstances, to break in unannounced recognizes that the peril to an officer serving a warrant is ever present and he must be able to protect himself. This usually can be done only at the time the warrant is being executed. The circumstances where verified and detailed information is supplied to the magistrate regarding the existence of weaponry which would present unusual danger to the searching officer, thereby permitting authorization of a no-knock entry, need not be considered here as the facts do not warrant it.

■ To excuse the officers' failure to announce their identity, purpose and presence and, thereafter, to excuse the necessity of a reasonable passage of time allowing for the voluntary surrender of the premises, there must be

seized in 90 per cent of the cases. In over half of the searches, loaded weapons were readily available to whomever would go after them.

more than the presumption that the evidence would be destroyed merely because it could easily be accomplished. *See Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971). The argument could be made that contraband would be destroyed in every case where it was possible when the actor was aware that search or arrest was imminent. Accordingly, the police failure to announce their identity and allow a reasonable time for the voluntary surrender of the premises will not be excused on the mere presumption drug raids are dangerous and deadly weapons may be used. The fact evidence *may be* destroyed, or police *may be* in danger, does not justify the suspension of the fourth amendment. One of the prices we must pay for the security which the fourth amendment bestows upon us is the risk that, occasionally, drug dealers will go free. *See generally Commonwealth v. Newman,* 429 Pa. 441, 240 A.2d 795 (1968).

The Commonwealth's final argument is the police reasonably relied in good faith on the independent judicial determination of the issuing magistrate. Therefore, the Commonwealth argues, the police should not be penalized for relying upon the express authorization of a judicial officer. While this argument has serious merit under rulings promulgated by the United States Supreme Court in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), unfortunately for the Commonwealth, the Pennsylvania Supreme Court has taken a more restrictive view of the good faith doctrine. We are bound to follow the recent decision of this Commonwealth's Supreme Court in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), which has effectively terminated the use of the "good faith" exception by police in Pennsylvania.[4] Accordingly, we affirm.

Order affirmed.

Concurring opinion by BECK, J.

---

4. "This [Pennsylvania Supreme] Court has long emphasized that, in interpreting a provision of the Pennsylvania Constitution, we are not

BECK, Judge, concurring:

I concur in the decision of the majority affirming the suppression of evidence obtained during the search of appellee's residence. The Commonwealth asserts, and I agree, that the primary issue in this case is whether a judicial officer has the authority under Pennsylvania law to issue a "no-knock" search warrant. I write separately because the majority does not address this issue. The majority concludes that "authorization of a no-knock entry, need not be considered here as the facts do not warrant it." (Majority Opinion, at 84).

The underlying facts of the instant case are not in dispute. Based upon reliable information obtained from a confidential informant implicating appellee in the sale and distribution of illegal drugs, the police requested a warrant to search the residence of appellee. The affidavit requested that a search warrant be issued allowing both a nighttime and "no-knock" search.[1] The district justice approved the warrant.

bound by the decisions of the United States Supreme Court which interpret similar (yet distinct) federal constitutional provisions." *Commonwealth v. Edmonds*, 526 Pa. 374, 586 A.2d 887, 894. *See* cases cited therein, including *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); *Commonwealth v. Tarbert*, 517 Pa. 277, 535 A.2d 1035 (1987); and *Commonwealth v. Sell*, 504 Pa. 46, 470 A.2d 457 (1983), which states: "This Court has not hesitated to interpret the Pennsylvania Constitution as affording greater protection to defendants than the federal Constitution. *Id.*, 504 Pa. at 64, 470 A.2d at 467.

1. The affidavit presented by the police officers requested authorization for night time execution and authorization for execution without knocking and announcing because controlled substances were expected to be uncovered during the search. Specifically, the police stated on the affidavit continuation sheet

[t]hat your affiant and co-affiant report that it is a normal occurance [sic] for those involved in drug trafficking to keep firearms at or near the location where drugs are kept. In addition controlled substances can be readly [sic] destroyed in the event the person(s) involved in drug trafficking become alarmed to the presence of police. For the purpose of officer safety and to prevent the destruction of evidence, your affiant respectfully requests that a no-knock search warrant be issued. Your affiant and co-affiant additionally report that when drugs are present and drugs are being sold or used the drugs can be sold very quickly. In order to prevent the con-

The police thereafter executed the search warrant by entering appellee's home at approximately 1:00 a.m., without first knocking. The police did not announce their authority, that they had a search warrant, or the purpose for their entry.[2] The police uncovered and seized various quantities of cocaine and marijuana, drug paraphernalia, and various firearms. (N.T. for Suppression Hearing held on April 11, 1990, at 7–8).

Appellee filed a motion to suppress all evidence obtained in the search, arguing that the search was executed in violation of Pa.R.Crim.P. 2007, the "knock and announce" rule. Following an evidentiary hearing, the suppression court granted appellee's motion. The suppression court held that the Pennsylvania Rules of Criminal Procedure provide no authority for a judicial officer to make a determination of exigent circumstances prior to the execution of the search. Therefore, the district justice who issued the instant warrant had no authority to grant a "no-knock" search warrant. (Trial Court Opinion, at 5–6). As such, the court concluded that in the absence of exigent circumstances, the execution of the search warrant, without first knocking and announcing violated Pa.R.Crim.P. 2007. As a consequence the court suppressed all evidence seized during the search.[3]

> trolled substances at the Grubb residence from being sold or used your affiant requests that a night time search warrant be granted so that the information in this affidavit can be acted on immeaditally [sic].
> (Certified Record, at 5).

2. One police officer testified at the suppression hearing that they announced they were the police "[a]s we went through the front door." (N.T. for Suppression Hearing held on April 11, 1990, at 6). The police officer noted however, that the front door was forced in order to gain access to appellee's home. *Id.* Even if this testimony satisfied the Rule's requirement that the police announce their "identity" *before* entry, there was no testimony that the police announced their authority or purpose for forcefully entering appellee's home when they entered appellee's home. *See Commonwealth v. Newman,* 429 Pa. 441, 444, 240 A.2d 795, 796–97 (1968).

3. With respect to the existence of exigent circumstances, the suppression court noted that the Commonwealth's only evidence was a "general concern[ ] about the presence of weapons and the destruction

On appeal the Commonwealth raises three issues: (1) whether a judicial officer has the authority to issue a warrant that dispenses with the knock and announce requirement provided under Pa.R.Crim.P. 2007; (2) whether sufficient evidence was presented at the suppression hearing to conclude the existence of exigent circumstances justified immediate forcible entry into appellee's home; and (3) whether suppression is the appropriate remedy where the police rely in good faith on the judicial officer's grant of a "no-knock" search warrant.

Chapter 2000 of the Pennsylvania Rules of Criminal Procedure outlines the requirements for requesting, issuing and executing search warrants. Of particular importance to our rationale in finding no support for "no-knock" warrants are Rule 2006 which describes the information that must be included in the application for a warrant and Rule 2007 which dictates standards to be followed by the police in executing the search warrant.

Rule 2007 provides:

(a) A law enforcement officer executing a search warrant *shall, before entry, give,* or make reasonable effort to give, *notice of his identity, authority and purpose* to any occupant of the premises specified in the warrant, *unless exigent circumstances require his immediate forcible entry.*

(b) Such officer *shall await a response* for a reasonable period of time after his announcement of identity, authority and purpose, *unless exigent circumstances require his immediate forcible entry.*

(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

of evidence[;] there was no specific evidence in this case with regard to those concerns." (Trial Court Opinion, at 11).

Pa.R.Crim.P. 2007 (emphasis added).[4] Neither Rule 2006, Rule 2007, nor any other Rule in Chapter 2000 contains language authorizing a judicial officer to grant a "no-knock" search warrant.

The language of Rule 2007 is explicit and clear. The police must give notice of their identity, authority, and purpose, and must wait a reasonable period of time for a response, *prior* to forcing entry into the specified premises. The Rule permits one exception to the general rule requiring notice, i.e., if the police believe exigent circumstances exist, they may enter without notice, immediately and forcibly. I conclude where the Rule intends to make an exception, it does so with particularity. Therefore, no authorization for "no-knock" searches can be found in Rule 2007. By the same reasoning, authority for "no-knock" entry can not be read into Rule 2006. Rule 2006 is primarily a codification of the "particularity" dictates of the fourth amendment. The rule is highly specific. For example, Rule 2006(g) carefully delineates the conditions under which "nighttime" searches are permitted.[5]

Equally important, I find that policy considerations favor the prohibition of "no-knock" warrants. Foremost among these considerations is the fact that the fourth amendment permits only reasonable searches and seizures, and that long-held notions of reasonableness include the requirement that officers expressly announce their purpose and authority prior to effecting entry to execute a warrant. Fundamental minimum requirements of reasonableness must ac-

**4.** Rule 2007 codifies the announcement requirement created by the fourth amendment of the United States Constitution. *Commonwealth v. Golden*, 277 Pa.Super. 180, 184, 419 A.2d 721, 723 (1980). The purpose of the knock and announce rule is "to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against unauthorized entry of persons unknown to him or her, and to prevent property damage resulting from forced entry." *Commonwealth v. Morgan*, 517 Pa. 93, 97, 534 A.2d 1054, 1056 (1987); *Commonwealth v. Parsons*, 391 Pa.Super. 273, 278, 570 A.2d 1328, 1331 (1990).

**5.** Pa.R.Crim.P. 2006(g) provides "[i]f a 'nighttime' search is requested (*i.e.,* 10 p.m. to 6 a.m.), state additional reasonable cause for seeking permission to search in nighttime."

company every search including those upon the premises of a known offender. The Supreme Court stated the basis for this requirement as follows:

> The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application.... Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house.

*Miller v. U.S.,* 357 U.S. 301, 313, 78 S.Ct. 1190, 1198, 2 L.Ed.2d 1332 (1958).

The purpose of notice is to decrease the potential for violence. An unannounced entry by the police might trigger an occupant to respond in a violent manner. *Parsons,* 391 Pa.Super. at 277–79, 570 A.2d at 1331. Furthermore, notice is necessary as a protection of privacy in that it minimizes the chance of police entering the wrong premises. In addition, notice minimizes the likelihood of physical destruction to the premises to be entered. If an occupant is informed of the police's presence and purpose, the possibility is increased that he or she will open the door in response to notice, and that the police will not have to use force.

On the other hand, although anxious to protect individual liberties, courts cannot show themselves to be "unaware of the practical demands of effective criminal investigation and law enforcement." *Elkins v. U.S.,* 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960). Therefore, although notice should routinely be given, we recognize that, in certain circumstances, giving notice increases the danger to persons and increases the risk of destruction of evidence. In these cases notice should not be required. It is this rationale which has created the exigent circumstances exception to the notice rule. However, the "no-knock" warrant advocated by the Commonwealth would permit the issuing authority to determine that exigent circumstances exist at the time the warrant is issued. In my view exigent circumstances by their very nature cannot

usually be predetermined. The facts that exist at the time of the issuance of the warrant may no longer exist at its execution. The immediate perception and knowledge of the officer at the scene is ordinarily essential to determine whether notice is required. *See Parsley v. Superior Court of Riverside Cty.,* 9 Cal.3d 934, 109 Cal.Rptr. 563, 513 P.2d 611 (1983); *State v. Eminowicz,* 21 Ariz.App. 417, 520 P.2d 330 (1974). Even in those jurisdictions which approve the issuance of "no-knock" warrants, the officer still is required to reevaluate the existence of exigent circumstances at the scene.[6]

The valid execution of the "no-knock" warrant is dependent on the contemporaneous existence of exigent circumstances, which must be evaluated afresh at the time of execution. Under these circumstances, unless the police willfully ignored the continuing requirement of exigent circumstances, the availability of the "no-knock" warrant adds little, if anything, to the police officer's options.

Moreover, I cannot conclude that adherence to Rule 2007 overly inhibits police in the safe and workable execution of search warrants. Upon reviewing the relevant Pennsylvania case law, I find that in order to minimize danger and destruction of evidence the police currently are given wide latitude in deciding *at the scene* whether exigent circumstances exist. Furthermore, the "reasonable period of time" the police must wait to enter after notice is given is extremely short. *See, e.g., Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982); *Commonwealth v. Parsons,* 391 Pa.Super. 273, 277–79, 570 A.2d 1328, 1331; *Commonwealth v. Burstin,* 259 Pa.Super. 584, 393 A.2d 979 (1978); *see also Commonwealth v. Eliff,* 300 Pa.Super. 423, 438–44, 446 A.2d 927, 935–38 (1982). Considering the extensive case

**6.** The Commonwealth cites several jurisdictions that permit "no-knock" warrants, *see infra.* Each of these jurisdictions hold that even if a "no-knock" search warrant is issued, the police must still reconsider the circumstances immediately prior to execution of the warrant. *See, e.g., State v. Cleveland,* 118 Wis.2d 615, 626–27, 348 N.W.2d 512, 519 (1984); *Commonwealth v. Scalise,* 387 Mass. 413, 421–22, 439 N.E.2d 818, 823 (1982); *State v. Lien,* 265 N.W.2d 833, 839 (Minn. 1978).

law that liberally defines "exigent circumstances," and "reasonable period of time," I conclude that law enforcement officers are given broad latitude in the execution of search warrants. Within this bounded discretion, law enforcement officers are capable of effectuating search warrants so that personal injuries to either the occupants of a premises or to the police can be minimized and potential destruction of evidence can be forestalled.

The Commonwealth supports its position by referring to case law in sister states that permit "no-knock" warrants. (Appellant's Brief, at 7–8). I note that these jurisdictions holding that, in the absence of a procedural rule or legislative enactment, a magistrate can issue a "no-knock" warrant are in the distinct minority. LaFave, 2 *Search and Seizure* § 4.8(g).[7]

Moreover, in the jurisdictions cited by the Commonwealth, the prime reason offered for allowing a magistrate to issue "no-knock" search warrants is because "the informed and deliberate determination of a magistrate" is preferred to the often rushed response of a police officer. *Commonwealth v. Scalise,* 387 Mass. 413, 439 N.E.2d 818 (1982). While this analysis is proper when deciding whether probable cause exists to issue a warrant, the rationale fails when it is applied to the decision whether exigent circumstances exist such that "immediate forcible entry" is required. The conditions and circumstances justifying an "immediate forcible entry" can only be made at the scene, prior to the time of entry. *Parsley v. Superior Court of Riverside Cty.,* 9 Cal.3d 934, 940, 109 Cal.Rptr. 563, 566, 513 P.2d 611, 614 (1973).

The Commonwealth also contends that sufficient evidence was presented at the suppression hearing to establish that exigent circumstances did exist which warranted immediate forcible entry into appellee's home. (Appellant's Brief, at

7. As noted by LaFave, "[t]he prevailing but not unanimous view is that a magistrate may not issue a so-called no-knock search warrant in the absence of ... a statutory provision." LaFave, 2 *Search and Seizure* § 4.8, at 287 (footnote omitted).

15–16). As explained by the Commonwealth, "[b]y knocking and announcing themselves and their purpose, the police would have alerted the defendant to refuse the police entry and to stall for time to destroy the drugs on the premises, . . . [and to] arm himself against police intrusion." *Id.* at 15. The trial court held that although the police explained their *general* concerns regarding destruction of evidence and danger to their well being, they did not describe any *specific* or *particular* facts relating to the search of appellee's home. (Trial Court Opinion, at 11). The trial court therefore held there was inadequate evidence to establish that the police *reasonably* believed exigent circumstances existed immediately prior to their forced entry of appellee's home.[8] I agree with the trial court.

In essence, the Commonwealth requests our recognition of a "blanket rule" that because illegal drugs are involved in a search, exigent circumstances necessarily also exist. I have found no Pennsylvania case law, and the Commonwealth refers us to no authority, holding that because illegal drugs are expected to be discovered during a search, exigent circumstances presumptively exist. Our supreme court has in fact held that generalized expressions of exigencies will not, standing alone, support dispensing with the knock and announce rule. *Commonwealth v. DeMichel,* 442 Pa. 553, 277 A.2d 159 (1971). Because the Commonwealth in the instant matter could only point to the general information that this search involved illegal drugs, the suppression court correctly concluded there were insufficient particularized facts to establish the existence of exigent circumstances.

The police in the instant case entered appellee's home without first knocking and announcing their identity, authorization and purpose, and did not present sufficient specific

---

**8.** As noted by this court in *Commonwealth v. Parsons,* a review of the procedure followed in executing a search warrant centers on what the police reasonably believed at the scene when they were executing the search warrant. 391 Pa.Super. at 281–82, 570 A.2d at 1333 (citing *Ker v. California,* 374 U.S. 23, 41 n. 12, 83 S.Ct. 1623, 1633–34 n. 12, 10 L.Ed.2d 726 (1963)).

evidence to establish the existence of exigent circumstances. Therefore, I agree with the majority that exclusion of the evidence obtained in the instant search is mandated.[9] Additionally, I conclude that under current Pennsylvania law, a judicial officer is not authorized to issue a search warrant that dispenses with the Pa.R.Crim.P. 2007 knock and announce requirement.

I concur.

---

**9.** The last argument raised by the commonwealth, that the police relied in good faith on the warrant issued by the district justice, is thoroughly addressed by the majority's reference to *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). I completely join in the majority's analysis of this issue.