**Commonwealth v. White**

*J. Wesley Rowden, assistant district attorney*, for the Commonwealth.

*Donald E. Lewis,* for defendant David White.

*David P. Truax,* for defendant Mary White.

VARDARO, *J.,* November 5, 1992—

## FINDINGS OF FACTS

During the early morning hours of January 14, 1992, an individual who had been stopped for a traffic violation provided information to Lt. Frederick Wellman that sometime during the previous evening he had witnessed the defendant, David White, display a quantity of a clear, white, powdery substance the individual believed to be cocaine from a brown Ford Ranger pickup.[1]

The confidential informant described the individual who he had seen with the purported cocaine to be of medium height, dark hair and medium to light build. He also described the Ford Ranger as a pickup with a club cab and bearing California license plates.

Finally, he told the police where he believed the defendant David White, lived.

The police officers had no evidence to lead them to believe that the confidential informant was indeed credible since they had not used him before and they decided that it would be necessary to verify some of the information he provided before acting on that information.

Apparently, Lt. Wellman and Lt. Eric Campbell as well as other officers discussed how to go about verifying such information and apparently considered trying

---

1. This individual will be hereinafter referred to as a "confidential informant" insofar as he was so referred to in a search warrant later obtained with respect to this matter.

to use the post office, telephone directory and possible Maplewood School information but ultimately another officer, Patrolman Claude Lemley, came up with the plan that was used.

Apparently, it was now 8:00 or 9:00 A.M. on January 14, 1992 and two game commission officers in uniform happened to be at the police station. It was decided that Patrolman Lemley would go out to the residence described by the confidential informant as that of David White and that the plainclothes patrolman would indicate that he was a dog warden and that he had received a complaint that David White's dog had been running deer. The officers indicate there was no intent to enter the trailer and that they were just trying to verify the confidential informant's information although at least one officer indicated that specifically Patrolman Lemley was sent out to find evidence to support an affidavit of probable cause for a search warrant.

When Lemley and the two game commissioners arrived at the residence that they had been directed to by the information obtained from the confidential informant, they did in fact see the Ford Ranger to the rear of the house and they went to a closed patio entranceway to the mobile home. Initially, they knocked at the outside door and when they did not get a response, they entered the patio area and knocked at the main door to the trailer.

The defendant, David White, came to the door and they indicated that they were there with respect to the dog problem.

The defendant, David White, said that he would have to get dressed and he returned about five minutes later and invited the trio in.

They talked to the defendant, David White, for a short period of time carrying through the ruse with respect to the dog issue and then left.

Patrolman Lemley and one of the officers agreed that they had smelled what was familiar to them as the smell of burning marijuana.

While Officer Lemley and the game wardens were out attempting to verify the information provided by the confidential informant, the police officers back at the Titusville police station were preparing a search warrant for use in this matter.

Apparently, part of it had been filled out including the section with regard to items to be searched for in which the department used boilerplate language which they have on a memory typewriter apparently. Since they initially had received information with regard to purported cocaine from the confidential informant, they used that section from the memory typewriter rather than a direct and specific reference to marijuana which had been smelled at the home when Lemley was there.

The search warrant specifically referred to David Allen White as the occupant of the home.

Additionally, the affidavit of probable cause near the end stated that "We request this warrant on the facts and circumstances stated above." After that line, there was an additional sentence that said "At approx. 10:30 hours on January 14, 1992 an undercover officer made contact at this residence and observed the odor of burning marijuana in the air coming from the residence." Lt. Campbell, the affiant with respect to the warrant, indicated that the last line had inadvertently been left out when the facts and circumstances for probable cause were being typed and therefore it was added.

Ultimately, while there is some dispute as to the time, it appears that about 11:30 a.m. Lt. Leroy Dymond accompanied by Patrolman Lemley went back to the White residence to begin service of the warrant that had been obtained from Magistrate Ronald Cole. Lemley continued to remain in plainclothes as did Lt. Dymond and when they went to the same door that Lemley had previously gone to they knocked but it would not open. The defendant, David White, then let them into the trailer and apparently for a couple of minutes they carried on the ruse with respect to the dog problem not mentioning that they were there to serve a search warrant. Apparently the defendant, David White, knew Lt. Dymond and said hello to him by his first name.

Once the officers knew that other officers arriving in a staggered fashion were on their way into the driveway of the residence, they announced that they were in fact there to serve a search warrant and Mr. White was handcuffed and placed on the floor. He was patted down and apparently there was a bulge in his pocket. Money was removed from his person as was marijuana in a baggie and at that point he was placed under arrest for possession of that marijuana.

At some time prior to the search beginning, defendant Mary White was apparently handcuffed and her purse may have been searched.

She apparently was removed as was defendant David White with David White charged with possession of marijuana and Mary White charged with no crime.

Sometime prior to the removal, apparently David White did show the officers where there was another quantity of marijuana in a closet apparently in the master bedroom shared by both defendants.

Sometime during the search of the home, the Ford Ranger vehicle was also searched and the Common-

wealth concedes that was not appropriate under the terms of the warrant. However, there was apparently no contraband found that will be introduced with respect to the case against the defendants in this matter.

The facts and circumstances for probable cause in the warrant also indicated that "David A. White is known to this dept. as a drug dealer and we believe that he still has in his possession a quantity of narcotics." In cross-examination, it was admitted by Lt. Campbell, the affiant on the search warrant, that essentially David White's name had come up over the past several years as possibly someone who may be selling narcotics but that the police had never been able to prove that and were therefore suspicious but did not know that David White was a drug dealer.

## DISCUSSION AND CONCLUSIONS OF LAW

We must first make a determination as to whether the search warrant obtained was in fact valid.

Probable cause necessary for a search warrant to be issued exists when the facts and circumstances set forth in an affidavit are sufficient to warrant a person of reasonable caution to believe that contraband to be seized will be in the specified place. *Commonwealth v. Fromal,* 392 Pa. Super. 100, 572 A.2d 711 (1990), *appeal denied,* 527 Pa. 629, 592 A.2d 1297 (1990).

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, [that] there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Gray,* 509 Pa. 476, 484, 503 A.2d 921, 925 (1985),

quoting *Illinois v. Gates,* 462 U.S. 238-239, 103 S.Ct. at 2332 (1983).

Such information offered to establish probable cause must be viewed in a non-technical ungrudgingly and positive manner. *Commonwealth v. Jones,* 506 Pa. 262, 269, 484 A.2d 1383, 1387 (1984); *Commonwealth v. Flaherty,* 400 Pa. Super. 397, 401, 583 A.2d 1175, 1177 (1990), *appeal denied,* 527 Pa. 629, 592 A.2d 1297 (1991). In applying the above "totality of the circumstances" test, the determination of whether probable cause for the issuance of a search warrant exists must be based on facts described within the four corners of the supporting affidavit. *Commonwealth v. Way,* 342 Pa. Super. 341, 346, 492 A.2d 1151, 1154 (1985) citing *Commonwealth v. Simmons,* 450 Pa. 624, 626, 301 A.2d 819, 820 (1973); *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991); *Commonwealth v. Davis,* 407 Pa. Super. 415, 595 A.2d 1216 (1991), *appeal denied,* 530 Pa. 630, 606 A.2d 900 (1992).

In assessing the existence of probable cause under the totality of the circumstances as such facts were averred in the probable cause affidavit in the case of sub judice, we find that the affidavit stated as follows:

"On January 13, 1992 at approximately 2245 hrs., parked in the 100 blk. of E. Central Ave., in the city of Titusville, PA, David A. White was observed in a brown Ford Ranger by a C.I. pull from under the driver's side seat a bag of white powder believed to be cocaine, approx. one ounce. An individual was seen getting into the vehicle with David A. White then drove around the block and then the individual exited the vehicle and entered the feed mill, at this point David A. White left the area in the vehicle. After the individual entered the feed mill

the C.I. witnessed the individual selling a portion of the nar[co]tics [sp.] to unknown actors. The quantity that was seen on the individual in the feed mill was considerably less than what was seen in David A. White's vehicle. David A. White is known to this dept. as a drug dealer and we believe that he still has in his possession a quantity of narcotics. We request this warrant on the facts and circumstances stated above."

"At approx. 1030 hrs. on January 14, 1992 an undercover officer made contact at this residence and observed the odor of burning marijuana in the air, coming from the residence."

Courts have generally applied stringent tests for determining whether an informant's testimony establishes probable cause. The Supreme Court of the United States has decided that the issue of whether an informant's information creates probable cause for a search or arrest is also to be determined by the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Corroboration of aspects of the informant's story may be combined with the story itself, in determining whether there is probable cause.

In *Gates,* the court noted the tip by itself was clearly not sufficient to establish probable cause since it established neither the informant's reliability nor how he came about his information. (*Id.* 76 L.Ed.2d at 552.) However, the independent corroboration obtained by the police allowed the court to assess the informant's reliability. In the case sub judice, the information contained in the probable cause affidavit does not establish the informant's reliability nor does it explain how he/she came about this information. Additionally, no independent corroboration of the informant's story is set

out in the affidavit. We therefore believe that the district justice was not entitled to rely on the information given by the confidential informant in determining probable cause.

With regard to the statement in the affidavit that the defendant is known to the police department as a drug dealer, the probable cause affiant admitted on cross-examination that this was not an accurate statement and that in actuality it was only known to the police department that there was a possibility that the defendant was a drug dealer.

The courts have held that, where the affiant has been shown to deliberately falsify or show reckless disregard for the veracity of a statement, such statement must be set aside when assessing the existence of probable cause. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Therefore, we will not consider this information in determining the existence of probable cause to search the defendants' home.

Consequently, we are left only with the statement that an undercover officer [Officer Lemley] smelled burning marijuana at the defendants' residence.

Defendants have alleged that Officer Lemley's undercover ploy to gain entry to their residence should invalidate reliance on any information obtained therein.

It has been held that entry into an individual's residence by undercover police officers facilitated by maintaining a ruse does not in and of itself violate that individual's Fourth Amendment rights. *Commonwealth v. Morrison,* 275 Pa. Super. 454, 418 A.2d 1378 (1980); *Commonwealth v. Moye,* 402 Pa. Super. 81, 586 A.2d 406 (1990),*appeal denied,* 528 Pa. 609, 596 A.2d 155 (1991).

Additionally, Lt. Campbell, the probable cause affiant, was entitled to rely on Officer Lemley's observations in formulating the probable cause affidavit. *Commonwealth v. Musi,* 486 Pa. 102, 113-114, 404 A.2d 378, 383 (1979); *Commonwealth v. Devlin,* 294 Pa. Super. 470, 440 A.2d 562 (1982).

The smell or odor of an illicit substance has been held to be sufficient to establish probable cause for the issuance of a search warrant. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (officer smelling the odor of fermenting mash is a very strong factor in determining probable cause); *Commonwealth v. Trenge,* 305 Pa. Super. 386, 451 A.2d 701 (1982) (smell of marijuana gives officer probable cause to arrest); *Commonwealth v. Pullano,* 295 Pa. Super. 68, 440 A.2d 1226 (1982) (smell of marijuana burning gives officer probable cause to arrest); *Commonwealth v. Stoner,* 236 Pa. Super. 161, 344 A.2d 633, 635 (1975); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (probable cause to issue a search warrant may be based upon officer's detection of odor sufficiently distinctive to identify a forbidden substance).

Therefore, in viewing the four corners of the affidavit, the district justice was entitled to find that the police had probable cause for a search warrant for the defendants' house based upon the firsthand observations of Officer Lemley.

Once the officers arrived at the defendants' home to execute the warrant, they continued the ruse from before. Our Superior Court has held that "police use of a ruse to *initiate* execution of a search warrant is permissible *where it is followed by an announcement of authority and purpose and by peaceful entry." Com-*

*monwealth v. Regan,* 254 Pa. Super. 555, 559, 386 A.2d 89, 91 (1978). (emphasis added)

See also, *Commonwealth v. DeCaro,* 298 Pa. Super. 32, 444 A.2d 160 (1982).

Factually, there are important distinctions between the above described precedent with regard to the allowable use of a ruse in the execution of a search warrant pursuant to Pa.R.Crim.P. 2007 and the case at hand. First, the police in this case continued the ruse even after they had gained entry to the defendants' residence, whereas in the cases under Rule 2007 in which the use of a ruse has been condoned, there was an announcement of authority either prior to entry being gained or at the very least simultaneously to entry being gained.[2] Secondly, in the case sub judice, the police utilized force in restraining the defendant once inside as they announced their real purpose for being there in direct contravention of one of the expressed purposes behind the "knock and announce" rule. See *Commonwealth v. DeCaro, supra.*

The proper method for executing a search warrant is set out in Pa.R.Crim.P. 2007 which states:

"(a) A law enforcement officer, executing a search warrant shall, *before entry,* give, or make reasonable effort to give, notice of his identity, authority and purpose to any occupant of the premises specified in the

2. In light of the Supreme Court's most recent opinion in *Commonwealth v. Means,* 531 Pa. 504, 614 A.2d 220 (1992), establishing that a five to ten second wait before going in after knocking is not sufficient we are not even sure that the case where the Superior Court of Pennsylvania determined that it was adequate for the police officers to rush through the door announcing their purpose once they had gained entry through a ruse is still good law. *Commonwealth v. Regan, supra.*

warrant unless exigent circumstances requires immediate forcible entry.

"(b) Such officer shall await a response for a reasonable period of time after his announcement of identity, authority and purpose, unless exigent circumstances require his immediate forcible entry.

"(c) If the officer is not admitted after such reasonable period, he may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the warrant." 42 Pa.C.S. §2007. (emphasis added)

It is obvious from a review of that rule that the entry in this case did not take place in a manner contemplated by that rule unless there were exigent circumstances.

The Supreme Court of Pennsylvania has set forth four exceptions to the requirement of the "knock and announce" rule which constitute those exigent circumstances. These include:

"(1) The occupants remain silent after repeated knocking and announcing;

"(2) The police are virtually certain that the occupants of the premises already know their purpose;

"(3) The police have reason to believe that an announcement prior to entry will imperil their safety;

"(4) The police have reason to believe that evidence is about to be destroyed."

*Commonwealth v. Chambers,* 528 Pa. 403, 408, 598 A.2d 539, 541 (1991); *Commonwealth v. Means,* 531 Pa. 504, 508, 614 A.2d 220, 222-223 (1992).

First of all, it does not appear that the Commonwealth has alleged any one of these exceptions but the facts do not seem to justify any of them if they had.

The defendant, David White, had given the uniformed game commission officers and Patrolman Lemley access to the home previously without event when the officers never even intended to get into the mobile home and there was no reason to believe they wouldn't get access this time. Obviously, they did get access using the ruse and there was no reason to believe that had they told the defendant, David White, their true purpose when he came to the door that he wouldn't have admitted them anyway.

Likewise, nothing was presented that would indicate that evidence was going to be destroyed nor that the police were virtually certain that the occupants knew their purpose. Additionally, obviously the first exception did not apply.

The only exception that even comes close would be if the police had reason to believe that an announcement prior to entry would imperil their safety. There is no evidence of that in this case. The Superior Court has held that the police cannot automatically not comply with the "knock and announce" rule based on a presumption that when they are searching for drugs there is inherent danger that drug dealers are armed and dangerous. *Commonwealth v. Grubb*, 407 Pa. Super. 78, 85, 595 A.2d 133, 135-136 (1991).

Therefore, assuming that there was no exception to allow noncompliance with the rule set forth in Pa. R.Crim.P. 2007, we must find that their entry was in violation of that rule insofar as they did not make any reasonable effort to give notice of their identity and their authority and purpose *before entering* the White premises.

It certainly was appropriate for them to use a ruse to get to the door of the White premises without violating the "knock and announce" rule articulated in

Pa.R.Crim.P. 2007 but, under all of the circumstances in this case, once they got to the door they should have complied with the "knock and announce" requirements set forth in that rule including the requirement that they wait a reasonable period of time after announcing before entering the premises. See *Commonwealth v. Ceriani,* 411 Pa. Super. 96, 600 A.2d 1282 (1991); *Commonwealth v. Chambers,* 385 Pa. Super. 605, 561 A.2d 1257 (1989), *affirmed,* 528 Pa. 403, 598 A.2d 539 (1991); *Commonwealth v. Means, supra.*

While this was not a "forced entry" of the type which normally appears where the officers push through without giving the occupant an opportunity to peacefully surrender the premises, *Commonwealth v. Means, supra, Commonwealth v. Chambers, supra,* this is nonetheless violative of the "knock and announce" rule. Obviously, this is akin to a "forced entry" in that entry was gained pursuant to the ruse without any effort to give the occupants a chance to surrender the premises peacefully after following the proper procedure set forth in Rule 2007. Those procedures as well as that of immediately shoving the defendant, David White, to the ground and handcuffing him upon announcing their purpose violate the purpose and spirit of that rule which is at least in part to prevent violence and physical injury to the police and occupants and to protect an occupant's privacy expectations. *Commonwealth v. McDonnell,* 512 Pa. 172, 176-177, 516 A.2d 329 (1986).

Having found that there was no technical compliance with Rule 2007's notice requirement, this does not ipso facto necessitate a finding that the evidence seized *must* be suppressed.[3] See *Commonwealth v. Davis,* 407 Pa.

---

3. We believe this to still be the status of the law in this Commonwealth although in *Commonwealth v. Means, supra* at 509, 614

Super. 415, 595 A.2d 1216 (1991); *Commonwealth v. Morgan,* 517 Pa. 93, 96-97, 534 A.2d 1054, 1056 (1987).

As was noted in *Commonwealth v. Mason,* 507 Pa. 396, 406-07, 490 A.2d 421, 426 (1985):

"... exclusion/suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy." (emphasis in original)

The reasonableness of a warrant's execution must be determined on a case by case basis bearing in mind the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Chambers, supra* at 410, 598 A.2d at 540; *Chambers, supra* at 610, 561 A.2d at 1259 citing *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) and *Commonwealth v. Newman,* 429 Pa. 441, 240 A.2d 795 (1968).

Our review of the case sub judice convinces us that the manner of execution of the search warrant violated both state and federal constitutional prohibitions of unreasonable searches and seizures and therefore the evidence must be suppressed. The record in this case simply

---

A.2d at 223, Chief Justice Nix writing for the Supreme Court states that "Therefore, a finding that the police's deliberate execution of a search warrant violated Rule 2007 dictates the conclusion that the fruits of the unlawful search should have been suppressed." In any event, since we are unclear as to the court's intention with respect to this issue, we will go through the normal constitutional analysis that has appeared in the case law prior to *Means, supra.*

does not support the reasonableness of the execution of the search warrant. Not only was there no evidence that anyone in the house attempted to destroy evidence, evade the police, arm themselves or resist the execution of the warrant, but in summary, as we have indicated, there was no evidence of exigent circumstances of any kind.

To the contrary, the defendant, David White, had been cooperative to the extent of letting the uniformed game commission officers and Patrolman Lemley into his home when they were not even attempting to seek entry and when there was a smell of marijuana present which was the only thing that ultimately gave the police the right to have a search warrant under the circumstances anyway.

While the police officers did not physically force their way into the residence, they conducted a ruse that went beyond anything reasonably allowable and was analogous to a "forced entry" and once in the premises, when they were prepared to execute the search warrant, they immediately physically restrained the defendant without giving him any opportunity to submit.

In balancing the benefits of deterring police misconduct against the costs of excluding otherwise reliable evidence, *Chambers, supra* at 612, 561 A.2d at 1260, citing *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) and *California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988), we must conclude under these circumstances that all evidence obtained as a result of the search must be suppressed as the result of an unreasonably executed warrant. There is no other remedy available other than the exclusion of the evidence. " '[A] search is not to be made legal by what it turns

up. In law, it is good or bad when it starts and does not change character from' what is dug up subsequently." *Commonwealth v. Newman,* 429 Pa. 441, 449, 240 A.2d 795, 799 (1968).[4] (citation omitted)

---

4. In light of our decision with respect to the "knock and announce" rule, we need not get into other possible issues with respect to this matter.