COMMONWEALTH of Pennsylvania,
Appellant

v.

Waddel WAGSTAFF, Appellee.

Superior Court of Pennsylvania.

Submitted Aug. 14, 2006.
Filed Nov. 6, 2006.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for the Com.

Joseph C. Santaguida, Philadelphia, for appellee.

BEFORE: GANTMAN, POPOVICH, JJ., and McEWEN, P.J.E.

OPINION BY POPOVICH, J.:

¶ 1 The Commonwealth appeals the order granting a motion to suppress filed by Appellee Waddell Wagstaff claiming the trial court erred in holding that the police did not wait a reasonable period of time before executing a search warrant.[1] We affirm.

---

1. The Commonwealth certifies that the order suppressing physical evidence substantially handicaps the prosecution of this case. *See Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); *Commonwealth v. Davis,* 407 Pa.Super. 415, 595 A.2d 1216, 1217 n. 1 (1991); Pa.R.A.P. 311(d). Accordingly, this case is properly before us for appellate review.

¶ 2 In reviewing the grant of a motion to suppress, the standard of review is well-established; to-wit:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Chernosky*, 874 A.2d 123, 124–26 (Pa.Super.2005) (en banc) (quoting *Commonwealth v. Gaul*, 867 A.2d 557, 559 (Pa.Super.2005)).

¶ 3 In accordance with the above-cited principles, the facts, not being at issue, were recounted properly by the trial court, as herein relevant; namely:

On September 30, 2004[, at] approximately 7:30 PM[,] Philadelphia Police Officer Robert Billips along with seven other officers arrived at 1818 Titan Street, Philadelphia, PA to execute a search warrant. N.T. @ 15. According to Billips, after arriving in plain clothes he "put on his police outer garment, knocked and announced, waited approximately 35, 40 seconds or so at which time they forcefully made entry into the residence, announcing police all the time." *Id.* @ 16, 20. When the officers entered there was an elderly male sitting in the living room, approximately fifteen feet from the front door. *Id.* @ 17–18, 20–21. The officers proceeded upstairs where, through a cracked door, Appellee was observed in a rear bedroom playing an X Box on a television with the volume loud. *Id.* @ 16, 18, 28. The Officers announced that they were police, whereupon Appellee reached to the floorboard. *Id.* When Appellee sat back up, he was placed under arrest. *Id.* Numerous packets of crack cocaine were recovered from the floorboard area where Appellee had reached. *Id.* @ 17. Also confiscated was $1,571 from a shoe box, a digital scale, and a key fitting the door to 1818 Titan Street. *Id.*

Trial court opinion, 10/31/05, at 1–2.

¶ 4 The product of the search resulted in Appellee being charged with possession with intent to deliver a controlled substance, possession of a controlled substance, and criminal conspiracy. On June 23, 2005, Appellee raised a challenge to the manner and method by which the police executed the search warrant. Initially, Appellee argued that the warrant for 1818 Titan Street had been issued without probable cause. The trial court rejected this claim. Undaunted, Appellee mounted a second attack of the warrant on the basis that the police executed it improperly by failing to wait long enough after knocking and announcing their identity before forcibly entering the residence. N.T. Motion to Suppress, 6/23/05, at 13.

¶ 5 At the conclusion of argument from both attorneys, the trial court, acknowledging "[t]his is a close case," granted Appellee's motion to suppress. The Commonwealth filed a timely appeal, and, in response to a Pa.R.A.P.1925(a) order, submitted a Rule 1925(b) statement raising the question:

Did the [trial] court err by suppressing contraband on the ground that the police supposedly did not wait long enough after knocking and announcing themselves before executing a valid search warrant where the police waited at least twice as long as required by law?

Commonwealth's brief, at 4. Further, the Commonwealth adds that, "the police had every right to enter at that point in order to ensure that the drugs for which they were searching would not be flushed down a toilet or otherwise placed beyond their reach." *Id.* at 8. We think not because there is no basis in fact or law for drawing such a conclusion from the testimony elicited from the police during the suppression hearing.

¶ 6 Pennsylvania Rule of Criminal Procedure 207 provides that, after knocking, announcing, and waiting a reasonable period of time, an officer who is not admitted by an occupant of the premises may enter forcibly the premises in order to execute a search warrant.[2] Under Rule 207 (and criminal law in general), what is "reasonable" is a case-by-case determination based upon the information available to the police, rather than engaging in "a subjective analysis of what the occupants of the particular premises knew and whether they thought the police had provided them with sufficient time to relinquish the premises voluntarily." *Commonwealth v. Parsons,* 391 Pa.Super. 273, 570 A.2d 1328, 1333 (1990) (*citing Ker v. California,* 374 U.S. 23, 41 n. 12, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)); *see also United States v. Banks,* 540 U.S. 31, 35, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003) ("The Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization, speaking to the manner of searching at all simply in terms of the right to be 'secure [...] against unreasonable searches and seizures.' Although the notion of reasonable execution must therefore be fleshed out, we have done that case by case, largely avoiding categories and protocols for searches.").

¶ 7 At the suppression hearing, the Commonwealth possesses the burden of establishing by a preponderance of the evidence that the search or seizure of evidence satisfied the mandates of Rule 207 and, therefore, that the evidence sought to be admitted is admissible. *Parsons,* 570 A.2d at 1331 (citation omitted).

¶ 8 We commence our analysis with a discussion of the underlying purposes of Rule 207. "The purpose[s] of the 'knock and announce' rule," as articulated by the Pennsylvania Supreme Court in *Commonwealth v. Morgan,* 517 Pa. 93, 534 A.2d 1054 (1987), "[are] to prevent violence and physical injury to the police and occupants, to protect an occupant's privacy expectation against unauthorized entry of a person unknown to him or her, and to prevent property damage resulting from forced entry." *Id.,* at 97, 534 A.2d at 1056; *Commonwealth v. Crompton,* 545 Pa. 586, 682 A.2d 286 (1996).

¶ 9 In the present case, the police announced their identity, but did not announce their purpose when executing the search warrant.[3] *Commonwealth v.*

2. Rule 207 provides:

   (A) A law enforcement officer executing a search warrant shall, before entry, give, or make reasonable effort to give, notice of the officer's identity, authority, and purpose to any occupant of the premises specified in the warrant, unless exigent circumstances require the officer's immediate forcible entry.

   (B) Such officer shall await a response for a reasonable period of time after this announcement of identity, authority, and purpose, unless exigent circumstances require the officer's immediate forcible entry.

   (C) If the officer is not admitted after such reasonable period, the officer may forcibly enter the premises and may use as much physical force to effect entry therein as is necessary to execute the search.

   Pa.R.Crim.P. 207 (**Manner of Entry Into Premises**) (2005 Edition).

3. At the suppression hearing, on direct examination, Officer Billips testified, as herein relevant:

*McDonel,* 411 Pa.Super. 187, 601 A.2d 302, 304 (1991) ("Generally, absent exigent circumstances, police must announce both their authority and purpose before forcible entry." (citations omitted)). In this jurisdiction, we have recognized four exceptions to the requirements of the knock and announce rule:

1. the occupants remain silent after repeated knocking and announcing;

2. the police are virtually certain that the occupants of the premises already know their purpose;

3. the police have reason to believe that an announcement prior to entry would imperil their safety; and

4. the police have reason to believe that evidence is about to be destroyed.

*Commonwealth v. Means,* 531 Pa. 504, 508, 614 A.2d 220, 222 (1992). If the Commonwealth establishes any of these exigencies, the police may force entry without knocking, announcing their identity and purpose, or waiting for the occupant to respond. *Means, supra.* None of these exigencies were argued or proven at the motion to suppress hearing. Rather, the Commonwealth argued only that, on the facts presented, "the officer had reason to believe the premises were not going to be surrendered peaceably." N.T. Motion to Suppress, 6/23/05, at 32. However, on appeal, the Commonwealth shifts gears and now contends that the destruction of evidence

should excuse the police's conduct in executing the search warrant; to-wit:

In light of this authority, [*United States v. Banks, supra,* and *Commonwealth v. Walker,* 874 A.2d 667, 676 (Pa.Super.2005) (there is no requirement that a defendant be afforded an opportunity to destroy evidence),] the police conduct that [Appellee] challenges here undoubtedly passes muster. Officer Billips and his colleagues arrived at 7:30 p.m., a time when no one in the house—except perhaps a very young child—was likely [to] be sleeping. Moreover, after knocking and announcing, they waited a full thirty-five or forty seconds—roughly double the fifteen or twenty seconds approved in *Banks,* let alone the substantially shorter interval at issue in *Walker.* Viewing the situation from the vantage point of the police, as required, there was good reason to believe that the occupants of the house would have responded in some way during that period, had they planned to cooperate. *The continued silence from behind the door gave rise to the apprehension that the very evidence for which the search warrant had been issued might soon disappear, in the absence of prompt intervention.*

Appellant's brief, at 12–13 (emphasis added). In regard to the destruction of evidence giving rise to an exigency dispensing

---

Prior to the execution of the search warrant on 1818 Titan, I was standing out in front of 1818 Titan. As officers arrived, I instructed them this is the location, because some of the houses on that block aren't clearly marked.

Officers exited the vehicle, I put on my police outer garment, knocked and announced, waited approximately 35, 40 seconds or so at which time we forcefully made entry into the residence, announcing police all the time.

N.T. Motion to Suppress, 6/23/05, at 16. On cross-examination, Officer Billips confirmed

the announcement portion of the "knock and announce" rule, but there was no mention that he stated his purpose prior to entering Appellee's premises; to-wit:

[Appellee's counsel:]

Q. Officer [Billips], what you're telling us is that when you went to this location [at 1818 Titan], you knocked on the door, announced "police," you waited 30 to 40 seconds and then you gained forceful entry, is that correct?

[Officer Billips:]

A. That is correct.

N.T. Motion to Suppress, 6/23/05, at 20.

with the knock and announce procedure, as recited earlier, the Commonwealth is correct:

> [T]he common law knock-and-announce principle is one focus of the reasonableness enquiry; and [...] the standard generally requires the police to announce their intent to search before entering closed premises, the obligation gives way when officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or [...] would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence."

*Banks,* 540 U.S. at 35, 124 S.Ct. 521 (quoting *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)). However, in this case, to accept the Commonwealth's argument is to recognize a presumption whereby exigent circumstances sufficient to do away with the knock and announce rule would exist any time a search for drugs is conducted. We would, in effect, be taking judicial notice of the fact that drug dealers customarily attempt to destroy evidence rather than have it seized, and, therefore, any search of a suspected dealer's base of operation would necessarily result in the destruction of evidence. We are unwilling to create this presumption. *Commonwealth v. Grubb,* 407 Pa.Super. 78, 595 A.2d 133, 135 (1991). In any event, a mere presumption that the evidence would be destroyed is not enough. *See Commonwealth v. Bull,* 422 Pa.Super. 67, 618 A.2d 1019, 1022 (1993) ("[T]here must be more than the presumption that the evidence would be destroyed merely because it could be easily accomplished [...]. The fact that evidence *may* be destroyed [...] does not justify the suspension of the fourth amendment." (emphasis in original) (*quoting Grubb,* 595 A.2d at 136)).

¶ 10 Stated otherwise, while the Commonwealth makes an argument premised upon exigent circumstances, there was no evidence presented at the suppression hearing of the existence of any exigencies at the time of the execution of the warrant. *Cf. Grubb,* 595 A.2d at 135 ("The right, on the scene, under exigent circumstances, to break in unannounced recognizes that the peril to an officer serving a warrant is ever present and he must be able to protect himself. This usually can be done only at the time the warrant is being executed.").

¶ 11 Herein, the lack of evidence supportive of the Commonwealth's destruction of evidence argument is inimical to its position excusing the manner and method by which the police executed the search warrant. Similarly, in *Commonwealth v. Carlton,* 549 Pa. 174, 701 A.2d 143 (1997), the police announced their presence but did not announce their purpose and forced the door after twenty to thirty seconds. The Supreme Court noted that the police failed to state their purpose prior to entering the dwelling and that there were no exigent circumstances that would have excused the police from announcing their purpose. The Supreme Court also noted:

> If police had identified themselves and stated their authority and purpose, the absence of a response within a reasonable time would have justified a forced entry. In the absence of a statement of authority and purpose, however, it was reasonable and within their constitutional rights that the occupants did not respond.

*Carlton,* at 184–85, 701 A.2d at 148.

¶ 12 *Sub judice,* the police identified themselves, but they failed to state their purpose. *Compare Commonwealth v. Douventzidis,* 451 Pa.Super. 280, 679 A.2d 795, 798 (1996) ("Unlike the suppression court, we find this case presents us with a

myriad of reasons why the execution of the search warrant was improper. First, the police clearly did not comply with the well established 'knock and announce' rule of this Commonwealth when they failed to state their purpose prior to entering the dwelling."), and *contrast Walker,* 874 A.2d at 674 ("Here, the police clearly identified themselves and stated their authority and purpose."). Furthermore, there is no showing the police believed the destruction of evidence was imminent, thus justifying the waiver of the knock and announce rule. *Contrast Commonwealth v. Dean,* 693 A.2d 1360, 1363 (Pa.Super.1997) ("We conclude that the officers were justified in departing from the knock and announce rule, because they had a specific and artic-

ulable reason to believe that they were in peril." (citation omitted)).

¶ 13 In sum, there were no exigent circumstances excusing the police from announcing their identity *and purpose.* Therefore, it was not error for the trial court to grant the motion to suppress the evidence seized from Appellee's house.[4] *Carlton, supra.*[5]

¶ 14 Order affirmed.

4. The Commonwealth also argues that the knock and announce rule was never compromised, and Appellee would not have been prejudiced by any departure from the rule, because Appellee "was on the second floor of the house, engrossed in a video game, with the volume turned up so loud that he did not even notice the police shouting as they ascended the stairs. It would not have mattered to [Appellee] in the least whether or not the police had pointlessly tarried [*sic*] longer outside the front door." Commonwealth's brief, at 15. The Commonwealth's argument misses the mark.

> We reiterate that our focus is not upon whether [A]ppellant *actually* knew that the police were attempting to execute a search warrant of the premises. In addition, our focus is not upon what [A]ppellant was doing when the police sought admission and, whether, considering that, [A]ppellant was given sufficient time to relinquish the premises voluntarily. Rather, our inquiry is whether the record contains sufficient evidence for the trial court to have concluded that the *police reasonably believed* that the occupants did not intend to surrender the premises voluntarily.

> *Parsons,* 570 A.2d at 1333 (citations omitted; emphasis in original).

The fact that Appellee was on the second floor playing a video game so loud he may not have heard the police knock is of no moment. Rather, absent the police's announcement of their *purpose* for knocking upon Appellee's

door, the homeowner did not need to answer the police, as was his constitutional right. *Carlton,* at 184–85, 701 A.2d at 148. Therefore, under the particular facts of this case, the police could not have reasonably believed that the occupant of 1818 Titan did not intend to surrender the premises voluntarily. *See* Trial court opinion, 10/31/05, at 3–4 ("The record is devoid of any evidence of exigent circumstances which would warrant, under the circumstances presented, the brief period of time before forced entry.").

5. Writing in dissent in *Carlton,* Madame Justice Newman, joined by Justice Castillo, would have excused the officers' failure to announce their purpose because of the presence of exigent circumstances: "Because [the police] made two undercover drug purchases from two different sellers, the police knew there was more than one member of this criminal enterprise. In addition to that, [one of the officer's] purchase of crack cocaine five minutes earlier was clear evidence that the occupants of the home were actively involved in selling crack cocaine at the time the police approached the house. This, combined with the fact that the police arrested Donald Carlton on the street after he was spotted three or four houses away, leads to exigent circumstances that render[ed] it unreasonable to require the police to stand on the porch waiting and announcing their purpose." *Carlton,* at 195, 701 A.2d at 153. In support of this position, the dissent cited and quoted exten-

sively *Commonwealth v. Stanley,* 498 Pa. 326, 446 A.2d 583 (1982). *Stanley* found the fact that the police were executing a search warrant for Appellant, who was reported armed and had escaped from prison for the crime of murder committed with a firearm, created exigent circumstances dispensing with the need to announce their purpose after stating their identity and waiting up to one minute without any response before gaining forceful entry. *Stanley* did not carry the day for the dissent in *Carlton, supra,* and it will not do so herein for the Commonwealth, who cites *Stanley* in support of their exigent circumstances argument to excuse the police's failure to announce their purpose before entering Appellant's premises. *See* Commonwealth's brief, at 13. The facts herein are distinguishable from those found in *Stanley,* which excused the police's failure to announce their purpose before gaining forceful entry into Appellant's premises because exigent circumstances did exist there, but such is not the case here.