**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Jonathan J.B. SCOTT, Appellee.**

Superior Court of Pennsylvania.

Submitted Oct. 18, 2006.

Filed Jan. 12, 2007.

David P. Johnson, Asst. Dist. Atty., Lewisburg, for Com., appellant.

Stephen F. Becker, Lewisburg, for appellee.

BEFORE: MUSMANNO, TODD and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 The Commonwealth appeals from the February 3, 2006, Order granting appellee Jonathan B. Scott's omnibus pretrial motion to suppress evidence. The evidence was seized after Northumberland and Union County probation officers, who were visiting the home of Mark McDowell, an offender serving probation, searched a bag in appellee's possession and discovered marijuana and scales. The Commonwealth argues probation officers have police power, as endowed by 61 P.S. § 309.1, **Peace officers; arrest, probation or pa-** **role violation,** and appellee's consent to search the bag he carried from McDowell's apartment was voluntary, thereby making the officers' search and seizure valid.

■ ¶ 2 In reviewing the grant of a motion to suppress, we are guided by the following standard of review.

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of facts bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Wagstaff,* 911 A.2d 533, 534 (Pa.Super.2006) (*quoting Commonwealth v. Chernosky,* 874 A.2d 123, 124–126 (Pa.Super.2005) (*en banc*), *appeal denied,* 588 Pa. 747, 902 A.2d 1238, 2006 Pa.LEXIS 1199 (Pa. July 12, 2006)). County probation and parole officers may execute a warrantless search of an offender's residence, personalty and person if reasonable suspicion exists to believe that "the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 P.S. § 331.27b, **Searches by county probation and parole officers** (d)(2). Absent exigent circumstances, prior approval by a supervisor must be obtained for the search of property; no such approval is required for a personal search. *Id.* at (d)(3). When ascertaining whether reasonable suspicion existed, the court shall take into account the following factors: (1)

the officers' observations; (2) information provided by others; (3) activities of the offender; (4) information provided by the offender; (5) the officers' experience with the offender; (6) the officers' experiences in similar circumstances; (7) the prior criminal and supervisory history of the offender; and (8) the need to verify compliance with the conditions of supervision. *Id.* at (d)(6)(i)-(viii).

■ ¶ 3 We have considered the evidence of the defense and so much of the Commonwealth's evidence that remains uncontradicted. *Wagstaff, supra.* At the January 17, 2006, hearing on appellee's omnibus pre-trial motion, the only evidence presented on behalf of the defense was testimony offered by the appellee. The then 22–year–old appellee testified that on the afternoon in question, when he arrived at the home of his uncle, Mark McDowell, he encountered two men whom he determined, by observing their badges, to be law enforcement officers. Those men later identified themselves to appellee as McDowell's probation officers, Scott Kerstetter and Michael Yasenchak. N.T., 1/17/06, at 105, 138. In response to the officers' query, appellee provided his name. According to appellee, nothing more was said, and he then knocked firmly on the front door, causing the door to the residence to open by itself. Appellee testified he yelled for his uncle, but received no response. Appellee then proceeded into the house and up the narrow stairway, followed by the officers, who appellee states did not ask permission to enter. *Id.* at 106–107. Appellee testified he then picked up a black bag that belonged to him and was leaving the apartment via the stairwell when one of the officers shouted at him. *Id.* at 107. Appellee was unable to recall exactly what was shouted, only that it was done with force, "it was pretty much something to tell me to halt, to stop." *Id.* at 107–108. Appellee repeated-

ly testified that given the officers' apparent authority, he did not feel he was free to leave the scene. *Id.* at 111–112. The officers then began questioning appellee about the bag he was carrying, asking to whom it belonged, and whether they could look inside of it. *Id.* at 108–109. Appellee replied that the bag was his, and he refused their request to open it. *Id.* at 135. Appellee questioned the officers' right to look inside his bag, and the officers informed him they had a right to look into the bag because it came from the offender McDowell's apartment. *Id.* at 136. Believing the officers' authoritative assertion they had a right to search the bag, appellee handed it to them, and asked only that they wait until his uncle arrived to look inside. *Id.* at 109, 136, 143. (Appellee had guessed correctly that McDowell had left briefly to walk his dog.) According to appellee's testimony, each officer looked inside the bag, but did nothing until McDowell returned to the scene minutes later. *Id.* at 109–110. At that time, McDowell denied ownership of the bag, appellee repeated that it belonged to him, and the police were called by the probation officers, as the bag contained marijuana and scales.

■ ¶ 4 Considering this evidence in the light dictated by our standard of review, we are constrained to agree with the trial court that suppression of the evidence seized from appellee was appropriate. Pursuant to 61 P.S. § 309.1, **Peace officers; arrest, probation or parole violation,** probation officers possess "police powers and authority" only as to persons "on probation, intermediate punishment or parole under the supervision of said court. . . ." *Id.* Officers Kerstetter and Yasenchak therefore possessed police power and authority only as to offender McDowell, and none as to appellee. As the trial court stated, "[t]he defendant was a pri-

vate citizen not subject to any supervisory authority of the probation officers. They had no right to interact with him in any official capacity." Suppression Court Opinion, Knight, J., 2/3/06, at 10. Despite the officers' lack of legal authority, appellee, who had just turned 22 at the time of incident, testified credibly that he believed he was required to stop when the probation officers told him to do so, and that he had no other choice but to hand over his bag to them for inspection when they asked. *See Commonwealth v. Ayala,* 791 A.2d 1202, 1208 (Pa.Super.2002) (holding if a reasonable person does not feel free to terminate an encounter with "police" and leave the scene, a seizure of that person has occurred); *see also Commonwealth v. Jackson,* 428 Pa.Super. 246, 630 A.2d 1231, 1235 (1993), *appeal denied,* 537 Pa. 647, 644 A.2d 733 (1994) (holding a consent to search following an illegal detention is tainted and any fruit must be suppressed); *Commonwealth v. Roland,* 701 A.2d 1360, 1363 (Pa.Super.1997) (stating that to be valid, consent must be given "freely, specifically, unequivocally and voluntarily[,]" and not be the product of duress or coercion).

¶ 5 Further, unless there are exigent circumstances, none of which existed here, a search of McDowell's residence must have been supported by reasonable suspicion that, "the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." **Searches by county probation and parole officers,** *supra.* That is to say, if there had been evidence McDowell was under supervision for a drug offense, then perhaps the officers would have had reasonable suspicion for the search, but they still would have needed a supervisor's approval absent exigent cir-

cumstances. Here, no such suspicion existed; in fact, Officer Yasenchak testified his sole purpose for being at McDowell's residence was to conduct a routine home visit, and Officer Kerstetter testified he went along on the "spur of the moment." N.T. at 6, 44. Even if one were to concede the officers had the "right" to conduct a *Terry*[1] stop, which this Court specifically denies, the officers had no reasonable basis (suspicion) upon which to detain appellee. Once the bag was removed from the premises by appellee, the officers had no authority to detain appellee, search the bag that he removed from McDowell's residence, or do anything other than perhaps call the police on McDowell's behalf, if they believed the bag was being stolen. No evidence was presented to suggest the officers believed appellee to be armed and dangerous, warranting a search for their protection. Suppression was properly granted.

¶ 6 Order affirmed.

---

1. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).