J-S31007-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| STEVEN R. SEKELY, | |
| Appellant | No. 1740 MDA 2015 |

Appeal from the Judgment of Sentence June 24, 2015
In the Court of Common Pleas of Wyoming County
Criminal Division at No(s): CP-66-CR-0000205-2014

BEFORE:  SHOGAN, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 02, 2016**

Appellant, Steven R. Sekely, appeals from the judgment of sentence entered on June 24, 2015, in the Wyoming County Court of Common Pleas. After careful review, we vacate the judgment of sentence, reverse the order denying Appellant's suppression motion, and remand for further proceedings.

The trial court made the following findings of fact:

1. [Appellant was] charged with a driving under the influence … and appeared [on March 11, 2014] without legal counsel at the office and court of the Honorable Judge David Plummer located in Factoryville, Pa. for a Preliminary Hearing.

2. Upon learning that [Appellant] had presented himself without legal counsel Judge Plummer advised him to go to the Wyoming

---

[*]  Retired Senior Judge assigned to the Superior Court.

County Courthouse to make application for the legal services of the Wyoming County Public Defender.

3. Following Judge Plummer's directive, [Appellant] drove himself to the Wyoming County Courthouse, some miles away from Judge Plummer's court.

4. In that it was the policy of Wyoming County that applications for the service of the public defender were submitted through the Wyoming County Adult Probation Department, [Appellant] was directed to the Adult Probation Department.

5. [Appellant] appeared by himself at about 10:50 A.M. on March 11, 2014, to the Adult Probation Office whereupon he was brought into the office of Jerome Tonti, Wyoming County Adult Probation Officer.

6. Officer Tonti, upon coming into close contact with [Appellant], immediately detected an odor of alcoholic beverage emanating from [Appellant]'s mouth.

7. Thereupon Officer Tonti questioned [Appellant] as to where he had come from and [Appellant] admitted that he had come from Judge Plummer's office at Judge Plummer's request.

8. Before and at this time Tonti believed that [Appellant] was on bail for the driving under the influence charge, and so Tonti administered a portable breathalyzer test on [Appellant] which registered positive for alcoholic beverage on [Appellant]'s breath.

9. Tonti notified the Tunkhannock Police Department through dispatch and Patrolman Dustin Cokely arrived at the probation office five to ten minutes later.

10. Tonti neither arrested [Appellant] nor detained him but instead advised him it would be in his best interest if he remained at the probation office.

11. Tonti did not ask [Appellant] for his … car keys but upon questioning him, ascertained where his car was parked.

12. Tonti's office door was only partially closed during the interview process which ultimately resulted in [Appellant] being approved for the public defender's legal service.

13. Patrolman Cokely spoke to Tonti about his client [Appellant].

14. Patrolman Cokely could detect a strong odor of alcoholic beverage on [Appellant's] breath and observed him to have red glassy eyes.

15. Upon questioning of [Appellant] by Officer Cokely, [Appellant] admitted to consuming half a dozen beers the night before.

16. As a result of observing [Appellant] and his admitting to consumption of beers, Patrolman Cokely formed an opinion that [Appellant] was under the influence of Alcohol to a degree which rendered him incapable of safe driving.

17. Cokely had [Appellant] attempt to complete field sobriety tests, such as the walk and turn, which he failed after which Cokely placed [Appellant] into his custody.

18. Upon taking [Appellant] into his custody, Patrolman Cokely walked him to his car about half a block away, locked the car and kept the car keys [Appellant] had on him to the said car.

19. [Appellant] submitted to a chemical test of his blood which showed an alcohol content of 0.10%.

20. [Appellant] was in fact not on a bail status in that he had been summoned to the preliminary hearing by mailing of the criminal complaint and summons.

21. [Appellant] believed that Tonti had a "Probation Officer" shirt on and was carrying a side arm.

22. [Appellant] testified that he believed he could not walk out of Tonti's office was not given Miranda rights before Tonti's questioning him and was not advised of his right to consult a Lawyer by Tonti.

23. Upon cross examination, [Appellant] admitted that Officer Cokely advised him he was formally under arrest and handcuffed him.

24. Also upon cross examination, [Appellant] admitted that he had had three prior arrests for charges of driving under the influence.

25. [Appellant] admitted that although he believed Probation Officer's Tonti's office door was closed he never attempted to leave the probation office.

Trial Court Opinion, 12/22/14, at 1-4 (unnumbered).[1]

Following a bench trial on March 16, 2015, Appellant was convicted of driving under the influence ("DUI") pursuant to 75 Pa.C.S. § 3802(a)(1) (general impairment). As this was Appellant's second offense, the trial court, on June 24, 2015, sentenced Appellant to a term of five days to six months of incarceration and a $500 fine. Post-sentence motions were filed and denied, and this timely appeal followed.[2]

On appeal, Appellant raises the following issues for this Court's consideration:

1. Does the policy of Wyoming County, requiring an indigent defendant to apply for a public defender through the offices of

_____

[1] The December 22, 2014 trial court opinion was filed in response to and for disposition of Appellant's omnibus pretrial motion. At Count II of the motion, Appellant sought to have the evidence against him suppressed because he alleged, *inter alia*, that he was illegally seized and searched. Omnibus Pre-trial Motion, 7/25/14, at 2-5 (unnumbered).

[2] The trial court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

adult probation and parole violate 16 P.S. §9960.6 (the Public Defender's Act)?

2. Does the policy of Wyoming County, which requires indigent defendants to apply for a public defender through the office of adult probation, violate appellant's rights under the VI$^{th}$ and XIV$^{th}$ Amendments of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution?

3. Does the policy of Wyoming County, which requires indigent defendants to apply for a public defender through the office of adult probation, violate Appellant's rights under the V$^{th}$ Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution?

4. Did the restrictions placed on Appellant's freedom of movement and the subsequent administration of a portable breath test constitute an illegal seizure of his person in violation of the IV$^{th}$ and XIV$^{th}$ Amendments to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution?

Appellant's Brief at 4 (full capitalization omitted).

In his first three issues, Appellant argues that the role of the Public Defender has been abrogated by the Wyoming County policy that allows the Adult Probation Department to determine eligibility for appointed counsel. Appellant cites *Dauphin County Public Defender's Office v. Court of Common Pleas of Dauphin County*, 849 A.2d 1145 (Pa. 2004), as support for his position. We conclude that the instant case is distinguishable from *Dauphin County Public Defender's Office* because Appellant lacks standing to challenge the Wyoming County policy. "To establish standing to challenge a governmental action, appellant must establish he is aggrieved by the action, *i.e.*, he has a substantial, direct, immediate, and not remote

interest in the subject-matter of the litigation." **Commonwealth v. Wholaver**, 989 A.2d 883, 905 (Pa. 2010). We reach this conclusion because Appellant was not aggrieved by the policy delegating authority from the Public Defender to the Office of Adult Probation. As noted above, Appellant was informed that he was approved for a public defender.[3] Accordingly, we need not address Appellant's first three issues, and we shall proceed to Appellant's fourth issue.[4]

As observed above, Appellant alleges that he was subject to an illegal seizure and that the trial court erred in denying his motion to suppress evidence. Appellant's Brief at 23-25. After careful review, we agree with Appellant.

The standard of review we apply when considering an order denying a suppression motion is well established. An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. **Commonwealth v. Russo**, 934 A.2d 1199, 1203 (Pa. 2007) (citing **Commonwealth v. Boczkowski**, 846 A.2d 75 (Pa. 2004)). Where the record supports the trial court's factual findings, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn

---

[3]  Trial Court Opinion, 12/22/14, at 3 (unnumbered), ¶12.

[4] Nothing in this Memorandum should be understood as this Court's agreement with the Wyoming County policy.

therefrom are in error. *Id*. However, an appellate court is not bound by the suppression court's conclusions of law. *Id*. (citing *Commonwealth v. Duncan*, 817 A.2d 455 (Pa. 2003)).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings. Only factual findings which are supported by the record are binding upon this [C]ourt.

*Commonwealth v. Caple*, 121 A.3d 511, 517 (Pa. Super. 2015). In addition, questions regarding the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Freidl*, 834 A.2d 638, 641 (Pa. Super. 2003). In appeals from suppression orders, our scope of review is limited to the evidence presented at the suppression hearing. *In the Interest of L.J.*, 79 A.3d 1073, 1088-1089 (Pa. 2013).[5]

Our jurisprudence recognizes three levels of police-citizen interactions. The first is a mere encounter, which requires no level of suspicion. *Commonwealth v. Daniels*, 999 A.2d 590, 596 (Pa. Super. 2010). The second level is an investigative detention, which must be supported by

---

[5] Our Supreme Court in *L.J.* clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing. The suppression hearing in this case post-dates *L.J.*, and therefore, *L.J.* is applicable here. *Commonwealth v. Davis*, 102 A.3d 996, 999 n.5 (Pa. Super. 2014).

reasonable suspicion. *Id*. at 596–597. The third level is an arrest or custodial detention, which must be supported by probable cause. *Id.* at 597. "In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances." *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014) (citation omitted).

When we examine the totality of the circumstances, the focus is centered on whether the accused's movements have in some way been restrained by physical force or show of authority. However, when courts are making this determination, no single factor dictates whether a seizure has occurred. *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000). The United States Supreme Court and the Pennsylvania Supreme Court have employed an objective test to determine whether a reasonable person would feel free to leave or otherwise terminate the encounter. What constitutes a restraint on liberty prompting a person to conclude that he is not free to leave will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs. *Lyles*, 97 A.3d at 302-303 (quoting *Michigan v. Chestnut*, 486 U.S. 567, 573-574 (1988)).

Here, the record reveals that Appellant appeared in Magisterial District Judge David Plummer's courtroom on a separate charge of DUI on March 11, 2014. N.T., Suppression Hearing, 11/21/14, at 6. Despite this being the time for his preliminary hearing and arraignment, Appellant arrived without counsel. *Id*. at 6-8. Judge Plummer informed Appellant that he wanted to

complete Appellant's case that day. *Id*. at 8. The judge then testified that he communicated to Appellant that he could leave the courtroom, apply for a public defender, and return before 1:00 p.m. in order to complete the preliminary hearing and arraignment. *Id*. at 8.

When Appellant arrived at the Adult Probation Department to apply for counsel, Probation Officer Jerome Tonti believed he smelled alcohol emanating from Appellant's breath. N.T., Suppression Hearing, 11/21/14, at 14. Appellant was seated in Probation Officer Tonti's office which is the first office on the left down the hallway from the main waiting room. *Id*. at 36-37. Probation Officer Tonti testified that individuals arriving at Adult Probation have to be "buzzed" in; *i.e.*, the door has to be unlocked in order to gain entry. *Id*. at 36. Probation Officer Tonti stated that Appellant and he sat in the office with the door partially closed. *Id*. at 37. Probation Officer Tonti was wearing probation department attire consisting of a "probation shirt" with the Commonwealth of Pennsylvania's seal. *Id*. Probation Officer Tonti was unsure if he was wearing his firearm, but he testified that he assumed he was in fact carrying a sidearm. *Id*. Probation Officer Tonti incorrectly assumed that Appellant was on supervised bail and began questioning Appellant regarding his consumption of alcohol and driving. *Id*. at 15, 17, 60. The officer then administered a portable breathalyzer test which revealed a positive result for the presence of alcohol. *Id*. at 18. However, Probation Officer Tonti testified that he had no

authority to arrest Appellant, and administration of the breathalyzer was not a duty he was to perform as a probation officer; rather, he administered the breath test "in the interest of the Commonwealth." *Id*. at 18, 27.

Probation Officer Tonti contacted the Tunkhannock Police Department about Appellant driving and consuming alcohol. N.T., Suppression Hearing, 11/21/14, at 18. While Probation Officer Tonti testified that he never told Appellant that he could not leave, he did tell Appellant that it would "be in his best interest to remain so that he could be questioned further." *Id*. at 19-20. Patrolman Dustin Cokely arrived between five and ten minutes later and, based on Officer Tonti's allegations, began questioning Appellant. *Id*. at 19. Patrolman Cokely conducted field-sobriety tests, concluded that Appellant drove while under the influence of alcohol, and the patrolman placed Appellant in custody. *Id*. at 43.

Appellant testified that when Probation Officer Tonti sought to administer the breath test, he had no choice but to oblige. N.T., Suppression Hearing, 11/21/14, at 65. Appellant further testified that he was inside Probation Officer Tonti's office with the door closed, and he did not believe he was free to leave. *Id*. at 65-68. During Probation Officer Tonti's investigation, Appellant was never informed that he could refuse to answer questions or have a lawyer present in conformity with *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id*. at 68-69.

After reviewing the record, we are constrained to conclude that Appellant was subjected to an illegal search and seizure. Due to the fact that Appellant was not under Wyoming County supervision, Probation Officer Tonti lacked the authority to conduct a warrantless search or seizure. 61 Pa.C.S. § 6152; 61 Pa.C.S. § 6153; **Commonwealth v. Scott**, 916 A.2d 695, 697 (Pa. Super. 2007). In **Scott**, this Court addressed the legality of a probation officer searching a private citizen as follows:

> The defendant was a private citizen not subject to any supervisory authority of the probation officers. They had no right to interact with him in any official capacity. Despite the officers' lack of legal authority, appellee, who had just turned 22 at the time of incident, testified credibly that he believed he was required to stop when the probation officers told him to do so, and that he had no other choice but to hand over his bag to them for inspection when they asked.

**Scott**, 916 A.2d at 697-698.

We conclude the same is true here. Appellant was not under county supervision, and Probation Officer Tonti had no authority to search or seize Appellant. Upon smelling alcohol, Probation Officer Tonti administered a breathalyzer test, which is a search,[6] and informed Appellant that he should remain in his office while police were summoned. Probation Officer Tonti

_____

[6] Administering a breath test is a search under both the United States Constitution and the Pennsylvania Constitution. **Commonwealth v. Blasioli**, 685 A.2d 151, 155-156 (Pa. Super. 1996) (citing **Schmerber v. California**, 384 U.S. 757, 767 (1966) (blood); **Skinner v. Railway Labor Exec. Assn.**, 489 U.S. 602, 616-617 (1989) (breath and urine); and **Commonwealth Dept. of Transp. v. McFarren**, 525 A.2d 1185, 1188 (Pa. 1987) (blood, breath, and urine)).

- 11 -

was in uniform, carrying a gun, and from Appellant's point of view, Appellant was not free to leave. Thus, he was seized at this juncture. *See Commonwealth v. Ayala*, 791 A.2d 1202, 1208 (Pa. Super. 2002) (holding that if a reasonable person does not feel free to terminate and leave the scene of an encounter with law enforcement, a seizure of that person has occurred).

Both the Commonwealth and the trial court concluded that Appellant consented to the breath test and remained at the Adult Probation office voluntarily. Commonwealth's Brief at 25; Trial Court Opinion Denying Post-sentence Motions, 9/14/15, at 3 (unnumbered). We disagree. As we stated above, a reasonable person would not have believed that he was free to end the encounter and leave; accordingly, there was no consent. *See Scott*, 916 A.2d at 698 (citing *Commonwealth v. Jackson*, 630 A.2d 1231, 1235 (Pa. Super. 1993) (holding a consent to search following an illegal detention is tainted and any evidence gathered from that search must be suppressed); *Commonwealth v. Roland*, 701 A.2d 1360, 1363 (Pa. Super. 1997) (stating that consent must be given freely, specifically, unequivocally, and voluntarily; it cannot be the product of duress or coercion)).

For the reasons set forth above, we conclude that the trial court's findings in support of denying Appellant's motion to suppress are not supported by the record. Appellant was subjected to an illegal search and seizure. Thus, the trial court erred when it denied Appellant's motion to

suppress the evidence gathered as it was fruit of the poisonous tree. ***See Commonwealth v. Loughnane***, 128 A.3d 806, 815 (Pa. Super. 2015) ("The United States Supreme Court has stated that any material, tangible, or verbal evidence 'obtained either during or as a direct result of an unlawful invasion' is inadmissible at trial." (quoting ***Wong Sun v. United States***, 371 U.S. 471 (1963)). Accordingly, we vacate Appellant's judgment of sentence, reverse the order denying Appellant's motion to suppress, and remand for further proceedings consistent with this Memorandum.

Judgment of sentence vacated. Order denying suppression motion reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2016