J-S09020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TYREE JOHNSON | : | |
| | : | |
| Appellant | : | No. 2942 EDA 2018 |

Appeal from the Judgment of Sentence Entered September 24, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000327-2018

BEFORE:   SHOGAN, J., LAZARUS, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                            Filed: April 30, 2020

Tyree Johnson appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions for possession of a controlled substance,[1] possession with intent to deliver (PWID),[2] conspiracy—PWID,[3] and possession of drug paraphernalia.[4]  Upon careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(16).

[2] 35 P.S. § 780-113(a)(30).

[3] 18 Pa.C.S.A. § 903; 35 P.S. § 780-113(a)(30).

[4] 35 P.S. § 780-113(a)(32).

Throughout the first week of November 2017, Officer Michelle Proctor of the Philadelphia Police Department and her partner, Officer Beattie,[5] conducted surveillance of a residence located at 1841 Morris Street in Philadelphia, after receiving information that narcotics were being sold at that address. N.T. Suppression/Motion to Compel Hearing/Trial, 7/10/18, at 6-8. Over the course of the week, the officers conducted five controlled drug purchases at the house with the assistance of a confidential informant (CI) who previously participated in numerous investigations that led to several arrests and drug confiscations. *Id.* at 15-16.

On November 1, 2017, the officers gave the CI twenty dollars of pre-recorded buy money and instructed the CI to purchase marijuana at the house. *Id.* at 8. From her vehicle, Officer Proctor observed the CI speak with Johnson and an unknown male outside the house. *Id.* at 8-9, 20. Officer Proctor watched the CI hand the buy money to the unknown male, who handed the CI a clear bag containing a substance that was later tested and confirmed to be marijuana. *Id.* at 8-10. Following the purchase, Johnson and the unknown male entered the house. *Id.* at 9. The next day, November 2, 2017, the officers gave the CI another twenty dollars of pre-recorded buy money and instructed the CI to purchase marijuana at the house again. *Id.* at 10. Officer Proctor observed Johnson exit the house and speak with the CI,

_____

[5] Only Officer Beattie's surname and badge number (No. 9597) are provided in the certified record. *See* N.T. Suppression/Motion to Compel Hearing/Trial, 7/10/18, at 8, 12, 63.

who handed Johnson the buy money. *Id.* Johnson returned inside, came back out, and handed the CI a clear bag containing marijuana. *Id.* On November 3, 2017, the officers gave the CI forty dollars of pre-recorded buy money and instructed the CI to purchase crack cocaine and heroin at the house. *Id.* Officer Proctor watched Johnson exit the house, speak with the CI, and take the buy money from the CI. *Id.* at 10-11. Johnson went inside, came back out, and gave the CI two red packets containing a substance later tested and confirmed to be heroin, and one yellow packet containing a substance later tested and confirmed to be crack cocaine. *Id.* On November 6, 2017, the officers gave the CI twenty dollars of pre-recorded buy money and instructed the CI to purchase crack cocaine at the house again. *Id.* at 11. Officer Proctor saw Johnson on the front steps of the house and saw the CI walk to and from the house, but did not witness any exchange because traffic obstructed her view. *Id.* The CI returned to the officers with one orange packet containing crack cocaine. *Id.* Officer Proctor then applied for and obtained a search warrant for the house. *Id.*

The following day, November 7, 2017, Officers Proctor and Beattie met with the CI near the house, handed the CI twenty dollars of pre-recorded buy money, and instructed the CI to purchase crack cocaine at the house a third time. *Id.* at 12. The CI spoke with Quadir Rodison on the front steps of the house and, as Rodison went inside, another man, Ramon Dixon, guarded the doorway. *Id.* Rodison returned and, in exchange for the pre-recorded buy money, handed the CI two clear packets containing crack cocaine before he

and Dixon went back inside. *Id.* Officer Beattie relayed this information to backup officers in the area and instructed them to execute the search warrant. *Id.* at 13. Johnson and his cousin Ramel[6] entered the premises minutes before the warrant was executed. *Id.* at 24, 74-76. As seven or more officers dressed in full raid gear approached the house, they observed Rodison in the window beside the front door, and attempted to "play it off initially" by walking "a little bit past the first house." *Id.* at 13, 33. Upon seeing the raid team ascend the steps, however, Rodison ran away from the window, away from the direction of the front door beside him. *Id.* at 13, 18, 31-33. Noticing Rodison's flight, the raid team used force to open the front door of the house without knocking or announcing their identity and purpose.[7] *Id.* at 13, 32.

Inside the house, the raid team found Johnson, Rodison, Dixon, and Ramel in the front bedroom of the second floor. *Id.* All four men were detained, identified, and placed under arrest. *Id.* at 13. Police recovered two packets of heroin from underneath the bed, $178 in pre-recorded buy money from Dixon, and $63 in pre-recorded buy money from Rodison. *Id.* at 13-14. From the middle bedroom, police recovered one clear bag containing 13

---

[6] Officer Proctor and the Commonwealth refer to Ramel as "Ramel Robinson," N.T. Suppression/Motion to Compel Hearing/Trial, 7/10/18, at 13, 14, 18, 28, but Johnson testified that Ramel's last name is "Rodison." *Id.* at 76.

[7] In that moment, Officer Proctor was behind the house securing the rear exit, and she did not personally observe Rodison flee from the window; she was informed of Rodison's flight via police surveillance radio immediately prior to the raid team's entry. N.T. Suppression/Motion to Compel Hearing/Trial, 7/10/18, at 28-33.

orange packets of crack cocaine, one clear bag containing 15 grams of bulk crack cocaine, six clear jars of marijuana, one tin can containing 98 packets of heroin, and a scale. *Id.* at 14. From the rear bedroom, police recovered five jars of marijuana, "one packet of [h]eroin stamped, El Chapo," four brown boxes of unused blue glassine bags (used for packaging heroin), Johnson's probation card, and a Pennsylvania ID bearing Johnson's name and the address of that house, 1841 Morris Street. *Id.* at 14-16.

On July 10, 2018, the trial court held a hearing on Johnson's motion to suppress the evidence recovered from his house, during which Officer Proctor testified to the facts above. *See id.* at 7-36. The trial court denied Johnson's motion. *See id.* at 47-49. The court proceeded to hear argument on Johnson's motion to compel the disclosure of the identity of the CI, which the court also denied. *See id.* at 49-56. That same day, Johnson waived his right to a jury trial and the Honorable William Mazzola found him guilty of the above-stated crimes. *See id.* at 57-60, 84. On September 24, 2018, the court sentenced Johnson to an aggregate term of one to three years' imprisonment followed by five years of probation. Johnson timely filed a notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Johnson raises the following issues for our review:

1. [Whether t]he trial court erred by denying the [m]otion to [s]uppress where the police violated the knock and announce rule when entering [Johnson's] premises without any exigent circumstances[?]

2. [Whether t]he trial court erred by denying the [m]otion to [c]ompel [d]isclosure of [CI] where the [CI's] identity was material to the defense of mistaken identification, and the request was reasonable as disclosure would not jeopardize the [CI']s safety[?]

3. [Whether t]he evidence was insufficient to adjudicate [Johnson] guilty of [c]riminal [c]onspiracy where the Commonwealth failed to prove that [Johnson] made an agreement with others to distribute narcotics[?]

Brief of Appellant, at 11-14.

Johnson first claims that the trial court erred by denying his motion to suppress. He argues that when police forcibly entered his home, in violation of the "knock and announce rule," they violated his constitutional right to be free from unreasonable searches and seizures. Brief of Appellant, at 10.

In an appeal from the denial of a motion to suppress, our review is "limited to determining whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings." *Commonwealth v. Hall*, 199 A.3d 954, 959 (Pa. Super. 2018) (quotations and citations omitted).

> In making this determination, we may only consider the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the factual findings of the suppression court are supported by the evidence, we may reverse only if there is an error in the legal conclusions drawn from those factual findings.

*Commonwealth v. Lohr*, 715 A.2d 459, 461 (Pa. Super. 1998).

> Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an

- 6 -

appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. Super. 2010).

Pennsylvania Rule of Criminal Procedure 207 provides that law enforcement officers are required to knock and announce their identity and purpose to any occupant of the premises and wait a reasonable period of time for a response before executing a search warrant, "unless exigent circumstances require the officer's immediate forcible entry." Pa.R.Crim.P. 207(A)-(B). In Pennsylvania, we have recognized four exigent circumstances that constitute "exceptions to the requirements of the knock and announce rule." *Commonwealth v. Wagstaff*, 911 A.2d 533, 536 (Pa. Super. 2006). These exceptions are: (1) the occupants remain silent after repeated knocking and identification; (2) the police are virtually certain that the occupants already know their purpose; (3) the police have reason to believe that an announcement prior to entry would imperil their safety; and (4), the police have reason to believe evidence is about to be destroyed. *Id.*; *see also Commonwealth v. Kane*, 940 A.2d 483, 489 (Pa. Super. 2007) ("[I]n order to invoke an exception, police must only possess a reasonable suspicion that one of these grounds is present.").

To determine whether suppression is appropriate based on a violation of the knock and announce rule, "police conduct must be examined in light of the Fourth Amendment, which mandates that police [act] reasonabl[y]." *Id.*

at 491. "Under Rule 207 (and criminal law in general), what is 'reasonable' is a case-by-case determination based upon the information available to the police." **Wagstaff**, **supra** at 535. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action." **Commonwealth v. Coughlin**, 199 A.3d 401, 410 (Pa. Super. 2018). The Commonwealth possesses the burden of establishing by a preponderance of the evidence that the search or seizure satisfied the mandates of Rule 207 and that the evidence is therefore admissible. **Wagstaff**, **supra** at 535. Finally, we note that:

> There are no set rules as to the time an officer must wait before using force to enter a house; the answer will depend on the circumstances of each case. No case in this Commonwealth interpreting this rule has ever required officers to wait until the occupants destroy the evidence or flee and thus render a search unavailing or an arrest impossible.

**Commonwealth v. Walker**, 874 A.2d 667, 674 (Pa. Super. 2005).

Here, the Commonwealth admitted that the police did not knock and announce their identity and purpose before entering Johnson's home by force, but contended that the entry was justified because the occupants knew they were coming and why, might have been armed and offered resistance, and because police had reason to believe that evidence would be destroyed. N.T. Suppression/Motion to Compel Hearing/Trial, 7/10/18, at 22, 32, 43-47. At the suppression hearing, Officer Proctor testified that the raid team used force to enter Johnson's home because they saw Rodison run from the window and sought to get inside the house before evidence was destroyed by the

occupants. *Id.* at 32. Johnson argues that the police lacked any exigent circumstance to justify forcibly entering his home without knocking, announcing their purpose and identity, and waiting a reasonable period of time. Brief of Appellant, at 13. Specifically, Johnson argues that Rodison's flight from the window as police approached the home was insufficient to establish that narcotics, paraphernalia, or currency would be destroyed. *Id.*

At the hearing on Johnson's motion to suppress, the trial court offered the following rationale for denying the motion:

[I]t is clear that by a preponderance of the evidence[—]probably more[—]that the police were justified in believing, obviously, that there were drugs in the location, not only because of the surveillance that happened from the prior six days, but there was actually an alleged drug sale to the CI involved in this case made on the day the search warrant was executed not too long beforehand. As pointed out, [Johnson,] who had been identified by the officer as participating in prior drug sales from that location[,] had just arrived moments before. The police were, as stated, dressed in raid gear, which has blue and yellow police all over them so it is quite clear who they were. There were seven of them. You usually don't see seven police officers walking together on routine patrol. They approached the house trying to be covert, but [were] unsuccessful. **A person previously identified as one of the conspirators involved[, Rodison,] is at the bay window, sees them, and runs away from the window. He does not run in the direction of the door, which is to the left of the window. He runs away from the window.** I think under all these circumstances the police were justified; and [t]he [c]ourt is justified in finding that the people inside the premise[s] know the purpose when seven police decked out in raid gear are at the front door. I see no evidence in anything that is recovered or during the various transactions of any weapons, I do not think the safety issue alone would justify the exigent circumstances. . . . **The running away from the window evidence [supports] not only that the occupants knew what was happening, but that [there was] a strong**

- 9 -

**possibility that the evidence could be destroyed.** I am going to deny the motion.

Trial Court Opinion, 5/13/15, at 9-10 (emphasis added).

In *Commonwealth v. Beard*, 461 A.2d 790, 792 (Pa. 1983), the Pennsylvania Supreme Court explained that,

[t]he fact that [the appellant] recognized the police and[,] upon doing so, fled into the residence is sufficient evidence that he knew the identity and purpose of the police. Thus, the police had valid grounds for being virtually certain that [the Appellant] had ascertained their purpose and would attempt to destroy the evidence of narcotics. In such circumstances, noncompliance with the knock and announce requirement is excused.

*Id.* at 792-93 (emphasis added); *see also Commonwealth v. Dial*, 285 A.2d 125, 127 (Pa. 1971) ("when [officers] heard the sounds of running and the door was not opened, they were warranted in thinking that they were refused admittance and that an effort was underway to destroy evidence"); *Commonwealth v. Dean*, 693 A.3d 1360 (Pa. Super. 1997) (officers with specific, articulable reason to believe exigent circumstances exist are justified in departing from knock and announce rule).

Here, Rodison, who was previously identified as a drug dealer, and who sold drugs at the house just prior to the warrant's execution, fled from the window and front door upon seeing the raid team approach.[8] Rodison's flight gave the raid team a specific, articulable basis for believing exigent

---

[8] In fact, police apprehended Rodison (and the other coconspirators) on the second floor of the home where all of the contraband was located. N.T. Suppression/Motion to Compel Hearing/Trial, 7/10/18, at 13-14.

- 10 -

circumstances existed to justify a knock and announce violation; specifically, the police were virtually certain that the occupants already knew their purpose, and they had reason to believe evidence was about to be destroyed. **Beard**, **supra**; **Dean**, **supra**; **Dial**, **supra**. Accordingly, the suppression court properly denied Johnson's suppression motion.

Johnson also claims that the trial court erred by denying his motion to compel the disclosure of the CI. He contends that disclosure of the CI's identity was material to the preparation of his defense and that his request for disclosure was reasonable in that the CI's safety would not be jeopardized. Brief of Appellant, at 15-16.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." **Commonwealth v. Washington**, 63 A.3d 797, 801 (Pa. Super. 2013). "Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness." **Commonwealth v. Marsh**, 997 A.2d 318, 321 (Pa. 2010); **see also** Pa.R.Crim.P. 573(B)(2)(a)(i). The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source; "only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the

- 11 -

information should be revealed by balancing relevant factors,[9] which are initially weighted toward the Commonwealth." *Commonwealth v. Watson*, 69 A.3d 605, 607-08 (Pa. Super. 2019), quoting *Marsh*, *supra* at 321-22.

Here, Johnson contends that he overcame the Commonwealth's qualified privilege against disclosure with evidence establishing that disclosure was both material to his mistaken identity defense and reasonable. Brief of Appellant, at 15-16. Regarding the first prong, Johnson submits that he established a material need for disclosure because he denied his involvement in any drug sale and "testified that he looked like his cousin Ramel who also lived at the property." *Id.* at 15. However, Johnson only testified that Ramel "looks like [him]"—having a "husky buil[d]" and "facial hair"—at trial, after

_____

[9] In striking the proper balance, the court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Marsh*, *supra* at 322.

- 12 -

the court denied his motion to compel disclosure. *See* N.T. Suppression/Motion to Compel Hearing/Trial, 7/10/18, at 76-77. In arguing the motion, Johnson simply averred that the CI would provide exculpatory information, but "failed to explain how the revelation of the CI's identity would be material in preparing his defense" and "how the CI possessed relevant information." *Commonwealth v. Ellison*, 213 A.3d 312, 318 (Pa. Super. 2019). Accordingly, Johnson failed to make the threshold showing that the identity of the CI was material to the preparation of his defense, and the trial court did not err in denying his motion to compel disclosure. *See id.* (mere assertion that CI's identity is material to defense imposes no duty on trial court to balance competing interests and determine if disclosure required).

Lastly, Johnson challenges the sufficiency of the evidence of his conviction for criminal conspiracy—PWID. Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Tejada*, 107 A.3d 788, 792 (Pa. Super. 2015). We review the evidence in the light most favorable to the Commonwealth as verdict winner to determine whether there is sufficient evidence to allow the trier of fact to find every element of a crime beyond a reasonable doubt. *Id.*

> In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the

- 13 -

fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [fact-finder,] while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014).

A person commits the crime of PWID by knowingly creating, delivering, or possessing with intent to deliver a controlled substance or counterfeit controlled substance. 35 P.S. § 780-113(a)(30). To prove the crime of conspiracy, the Commonwealth must show a defendant entered into an agreement to commit or aid in an unlawful act with another person, that he and that person acted with shared criminal intent, and that an overt act was taken in furtherance of the conspiracy. *Commonwealth v. Feliciano*, 67 A.3d 19, 25-26 (Pa. Super. 2013) (en banc); 18 Pa.C.S.A. § 903.

Johnson argues that the Commonwealth failed to prove beyond a reasonable doubt that he made an agreement with others to distribute narcotics. Brief of Appellant, at 18. Specifically, he submits that, "[a]t most, the evidence showed that multiple individuals sold their respective narcotics from the same house[;]" Johnson did not exchange narcotics or money with another individual, and none of the packets recovered from his bedroom matched the packets in the other bedrooms. *Id.*

- 14 -

"An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." **Commonwealth v. Johnson**, 719 A.2d 778, 785 (Pa. Super. 1998). "The conspiratorial agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." **Feliciano**, **supra** quoting **Commonwealth v. Devine**, 26 A.3d 1139, 1147 (Pa. Super. 2011). These factors "may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." **Devine**, **supra** at 1147. In **Feliciano**, **supra**, we concluded that there was sufficient evidence to sustain the appellant's conviction for conspiracy to commit PWID where a woman exited the defendant's house and told an undercover agent, "He's bagging it up. He will be out," before the defendant exited the house and handed the agent five bags of cocaine. **Id.** at 26. We rejected the appellant's argument that the Commonwealth failed to prove the existence of any agreement between the appellant and the woman, explaining that, because the appellant acted in accordance with her statement to the agent, it was "sufficiently evident that [a]ppellant entered into an agreement with [her] with the shared criminal intent of selling cocaine, and he committed the necessary overt act by selling the drug." **Id.** Thus, here, it was not necessary for the

Commonwealth to prove that Johnson made an express agreement with the others to distribute narcotics or share in the profits. ***Johnson***, ***supra***; ***see also Feliciano***, ***supra***.

The evidence, viewed in the light most favorable to the Commonwealth as verdict winner, shows that four individuals including Johnson were engaged in a drug sales operation together and exercised joint possession and control over the premises as well as the drugs and packaging materials inside. In addition to the drug sales Johnson made to the CI over several days, Johnson was present when an unidentified male sold marijuana to the CI from the premises on November 1, 2017. Furthermore, during the week the warrant was executed, both Johnson and Rodison sold crack cocaine to the CI, but all of the crack cocaine recovered from the house was kept outside of Johnson's bedroom; this belies his argument that the individuals maintained their own "respective narcotics." Brief of Appellant, at 18. We agree with the trial court's conclusion that "[a]ny jury could have reasonably inferred that all of them were aiding each other in [their] endeavors in a tacit conspiratorial agreement based on the circumstantial evidence." Trial Court Opinion, 5/13/18, at 18. In sum, the evidence is sufficient to sustain Johnson's conviction for conspiracy to commit PWID.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/20